Timothy REDDY, Petitioner–Appellee,

v.

Phillip COOMBE, Superintendent of Eastern Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents–Appellants.

No. 269, Docket 87–2210.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1987.

Decided May 16, 1988.

Henriette D. Hoffman, New York City (The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for petitioner-appellee.

Paul Harnisch, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., New York City, Norman Barclay, Asst. Dist. Atty., New York City, on the brief), for respondents-appellants.

Before LUMBARD, TIMBERS and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Respondents Phillip Coombe, Superintendent of Eastern Correctional Facility, and Robert Abrams, Attorney General of the State of New York (collectively, the "State"), appeal from an order of the United States District Court for the Southern District of New York, Louis L. Stanton, *Judge*, granting the petition of Timothy Reddy for a writ of habeas corpus on the ground that the evidence of attempted robbery presented at his state-court trial for felony murder was insufficient to sustain his conviction. On appeal, the State contends that the evidence was sufficient to support Reddy's conviction. For the reasons below we agree, and we vacate the decision of the district court and remand for further proceedings.

### I. BACKGROUND

Reddy and his codefendant Cheryl Christenson were tried together in New York

State Supreme Court on charges of felony murder arising out of a homicide committed on April 4, 1978, in the course of conduct that the prosecution asserted was an attempted robbery. The State presented its case principally through testimony of law enforcement personnel, testimony of witnesses who had seen or talked with the defendants on April 4, and statements given by Reddy and Christenson to investigators. The jury was instructed not to consider any of either defendant's statements as evidence against the other. The defendants neither testified nor called any witnesses on their own behalf. The following description of the events comes largely from Reddy's statements in response to questioning by an assistant district attorney ("ADA") on April 5, 1978, the transcript of which was read to the jury.

### A. *The Events*

On the afternoon of April 4, 1978, Reddy received a telephone call from Christenson, who asked him to meet her at a bar on Eighth Avenue between 48th and 49th Streets in Manhattan. When Reddy arrived at the bar, Christenson told him that she and Reddy "were going to go down to rip off this guy, John," a man Christenson had been dating. Reddy and Christenson then waited at the bar until a friend of Christenson's arrived, bringing Christenson a gun. In Reddy's words, "We were going to scare [John] with the gun because we figured he had about fifteen hundred dollars on him.... She was going to go in because she knows him. She was going to ask to let me use the bathroom then we were going to come out and scare him. Then tie him up, take the money." The ADA asked, "Weren't you afraid that [John] might call the police after the two of you ripped him off, since he would know her?" Reddy replied, "Of course." The ADA pressed, "And you still decided that's what you were going to do?" Reddy replied, "Yes, because we needed the money."

After Christenson received the gun, she and Reddy walked to 531 West 48th Street, where John lived on the top floor. Christenson pressed the downstairs buzzer, but there was no answer. The two walked to the top floor and knocked on John's door, but again there was no answer. They waited a short time, then started back downstairs.

On their way down, they saw a man whom Reddy did not know, later identified as Ivan Zapata Enau, coming out of a second-floor apartment. Christenson spoke briefly with Enau. Reddy was on the second floor with them, but not close enough to hear their conversation. Enau did not speak English, so Christenson began to use sign language. Without speaking to Reddy or giving him any kind of signal, Christenson left the building with Enau and the couple walked to the corner grocery store, with Reddy following a half-block behind. Reddy waited on the street while they were in the store, then followed them back to Enau's building. He waited on the stoop as the couple went upstairs to Enau's apartment, then followed, and waited outside Enau's door. Reddy thought Christenson "probably would have tried" to get Enau to pay her for sexual acts and "[p]robably" was going to rob Enau.

The ADA asked Reddy, "When you talked about ripping off John did you talk about if you couldn't find him maybe seeing there [*sic*] was another mark?" His response was, "No, we didn't talk about it. This other guy just came out of his apartment."

After Christenson had been in Enau's apartment for ten minutes or less, the door opened, and Reddy saw Enau trying to push Christenson out and close the door. Reddy pushed the door open, struck Enau, and wrestled him to the floor of the kitchen. Enau got up, went to the sink, and picked up a large knife. With knife in hand, Enau moved toward Christenson who was standing by the door holding the gun. Reddy threw his arms around Enau's neck and dragged him to the floor. As Enau was getting up, Christenson shot him in the face, killing him. Reddy hastily departed; Christenson followed.

Reddy was found guilty of felony murder, *i.e.*, murder in the second degree by

reason of causing, during an attempted robbery, the death of a person other than a participant in the attempted robbery. *See* N.Y. Penal Law § 125.25[3] (McKinney 1987). He was sentenced to an indeterminate prison term of 18 years to life.

On appeal to the Appellate Division, Reddy argued, *inter alia,* (1) that the evidence was insufficient to prove that he had formed the specific intent to rob Enau, and that the State thus had failed to establish the felony of attempted robbery, which underlay and was essential to Reddy's conviction of felony murder; (2) that his statement to the ADA should have been suppressed because it had been obtained pursuant to an illegal arrest; and (3) that statements made by Christenson should not have been admitted in a trial to which he was a party. His conviction was affirmed without opinion, *People v. Reddy,* 79 A.D. 2d 1116, 436 N.Y.S.2d 791 (1st Dep't 1981), and leave to appeal to the New York Court of Appeals was denied, 53 N.Y.2d 946, 440 N.Y.S.2d 1045, 423 N.E.2d 412 (1981).

### B. *The Decision Below*

In November 1984, Reddy petitioned *pro se* in the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982), alleging that his statement to the ADA had been obtained pursuant to an illegal arrest, and that the evidence of intent to rob Enau was insufficient to sustain his conviction. The magistrate to whom the petition was referred recommended that the claim of unlawful arrest be rejected on the ground that a Fourth Amendment claim litigated in state court may not be the basis for federal habeas relief, *see Cardwell v. Taylor,* 461 U.S. 571, 573, 103 S.Ct. 2015, 2016, 76 L.Ed.2d 333 (1983) (per curiam); *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), but recommended that the petition be conditionally granted on the ground of insufficiency of the evidence.

After a *de novo* review, the district court concluded that the evidence was insufficient to support Reddy's conviction. Noting that in order to prove felony murder in the course of an attempted robbery, "[t]he

prosecution had to prove beyond a reasonable doubt that, *inter alia,* petitioner had the specific intent to rob Mr. Enau, the murder victim," Order dated May 1, 1987, at 1, the court found the evidence insufficient to establish that intent:

> Although petitioner was undoubtedly aiding the codefendant at that point, the two had been apart ever since abandonment of the plan to rob John, until petitioner saw his co-defendant at Mr. Enau's door; and the question was whether petitioner had, either singly or jointly with his co-defendant, formed the intent to rob Mr. Enau.
>
> After viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have, upon the evidence adduced at trial, found beyond a reasonable doubt that petitioner had such an intent.

*Id.* at 2. Adopting the magistrate's recommendation, the court ordered the State to release Reddy unless within 90 days it began new trial proceedings against him.

This appeal by the State followed. Though the normal relief upon a finding of insufficient evidence to convict is the dismissal of the indictment, and Reddy, now represented by appointed counsel, urges this Court to grant that relief, Reddy did not cross-appeal.

## II. DISCUSSION

■ On appeal, the State contends that the evidence at trial was sufficient to permit the inference that Reddy had formed an intent to rob Enau and to establish, therefore, that the killing of Enau was felony murder. We agree, and for the reasons below, we remand for further proceedings.

### A. *The Sufficiency of the Evidence*

New York's felony-murder statute provides, in pertinent part, that "[a] person is guilty of murder in the second degree when: ... [a]cting either alone or with one or more other persons, he commits or attempts to commit robbery ..., and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or

another participant, if there be any, causes the death of a person other than one of the participants...." N.Y. Penal Law § 125.25[3]. In assessing Reddy's claim that the State's evidence was insufficient to establish the crime of attempted robbery because there was no evidence of an intent to rob Enau, a federal habeas court is required to consider the trial evidence in the light most favorable to the State, upholding the conviction if *"any* rational trier of fact" could have concluded beyond a reasonable doubt that Reddy had the required intent. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). This means that we must credit every inference that could have been drawn in the State's favor, *see United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983); *United States v. Taylor*, 464 F.2d 240, 244–45 (2d Cir.1972), whether the evidence being reviewed is direct or circumstantial, *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

We view Reddy's own description of the events of April 4, taken in the light most favorable to the State, as sufficient to support the inference that he intended to assist in robbing Enau. In that statement, Reddy admitted that he and Christenson had agreed in advance on a detailed scheme to rob John. They needed money so badly that they felt no hesitance about robbing someone who knew Christenson well and could identify her to the police. They proceeded on their task with pronounced purposefulness, acquiring a gun and going to John's door. When they failed to find John at home, they moved without pause into the subsequent events involving Enau. The fact that Reddy and Christenson did not agree verbally to transfer their plan to Enau did not require the jury to infer that they had no intent to rob him. Their pressing need for money had not changed. They had already discussed the mechanics of their scheme, *i.e.*, that Christenson would gain entrance to the target's apartment and then get Reddy in, and if they wished to try their scheme on a second target, they

had little need to speak. Indeed, the defendants' failure to speak to each other at all when they encountered Enau arguably supports the hypothesis that their illicit plans had not been replaced by benign ones. Had all thoughts of robbery been abandoned or postponed, one might well expect that there would have been words or gestures communicating such resignation. But Christenson gave no such signal to Reddy, either verbal or physical. As Reddy said, though they had not discussed robbing someone other than John, "this other guy just came out of his apartment," and Reddy believed Christenson would "[p]robably" try to rob him.

Reddy's actions were consistent with both his belief and that probability. He knew that Christenson sometimes committed acts of prostitution, and he could easily envision her using this fact to maneuver herself into Enau's apartment. Reddy's furtive behavior avoided compromising Christenson's entry for ostensibly prostitutional purposes but kept him in position to assist in a robbery. Thus, he lagged behind in the hall without coming forward to introduce himself when Enau first appeared and was greeted by Christenson, then he followed a half-block behind the couple as they went to the store and returned to the apartment building. He remained briefly on the stoop, then positioned himself right outside Enau's door. If he and Christenson had no thoughts of robbing Enau, with Christenson entering the apartment only to offer sex, there would have been no apparent reason for Reddy to follow the couple or to post himself at Enau's door.

We therefore reject the district court's conclusion that no rational juror could conclude that this evidence revealed Reddy's intent to rob Enau. A rational juror could have inferred beyond a reasonable doubt from the record against Reddy taken as a whole, including his tactical positioning, the unabated need for money, and Reddy's belief that Christenson was "[p]robably" trying to rob Enau, that Reddy's actions toward Enau when the apartment door opened were an attempt to carry out the

original robbery scheme, with Enau as the new target. We conclude that the petition was improperly granted.

### B. *Other Claims*

 Anticipating the possibility that this Court might reverse the granting of the writ, Reddy has urged conditionally that we remand the case to the district court to allow him to pursue his claim, apparently exhausted in the state courts but not previously litigated in federal court, that the admission at trial of statements given by Christenson violated his rights under the Sixth Amendment, *see Bruton v. United States*, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L.Ed.2d 476 (1968). We agree that such a remand is appropriate.

Prior to the state court trial, Reddy had moved unsuccessfully for a severance on the ground that if he were tried with Christenson, the admission of statements made by Christenson would be unduly prejudicial to him. The state court denied the motion, opining that the statements of each defendant were "almost identical," and that *Bruton* principles were inapplicable. At trial, the court admitted the statements, instructing the jury that it was not to consider any of Christenson's statements as evidence against Reddy. At least one of Christenson's statements, however, was more favorable to the State than Reddy's own revelations as to whether Enau was a target of the defendants' intent to commit robbery. The ADA's interview of Christenson on April 5, as read to the jury, included the following questions and answers:

Q What were you going to do with the gun?

A I wasn't sure yet.

Q What was the general idea, what were you going to do?

A Get some money.

Q Did you have any idea from whom you were going to get the money?

A No, that's why Timmy and I got together because we weren't sure, we didn't know who.

The implication of this statement was that Reddy and Christenson meant to rob any plausible victim. While this is entirely consistent with Reddy's belief that Christenson probably meant to rob Enau when he fortuitously appeared on the scene, and with Reddy's actions that appeared to be in support of that robbery attempt, Christenson's statement was more explicit with respect to an essential element of the offense charged than any evidence the State presented against Reddy. If considered by the jury in its deliberations as to Reddy, Christenson's statement could have unfairly bolstered the case against him.

Accordingly, we remand for consideration of whether application of *Bruton* principles requires that Reddy be granted a new trial. We would hope that the appointment of counsel for Reddy would be continued in the district court.

### CONCLUSION

The order of the district court conditionally granting habeas corpus is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.