**Timothy REDDY, Petitioner,**

v.

**Phillip COOMBE, Superintendent, of Eastern Correctional Facility and Robert Abrams, Attorney General of the State of New York, Respondents.**

**No. 85 Civ. 0572.**

United States District Court, S.D. New York.

Feb. 8, 1990.

---

See also 79 A.D.2d 1116, 436 N.Y.S.2d 791 (unpublished opinion).

Henriette D. Hoffman, The Legal Aid Society, Federal Defender Services Unit, New York City, for petitioner.

Paul Harnisch and Norman Barclay, Asst. Dist. Attys., New York City, for respondents.

## OPINION AND ORDER

STANTON, District Judge.

The Court of Appeals reversed this court's decision granting Timothy Reddy's

petition for the writ of habeas corpus on the ground that the evidence was insufficient to support his state court conviction for felony murder. *Reddy v. Coombe*, 846 F.2d 866 (2d Cir.1988). In its opinion, familiarity with which is assumed, the court remanded "for consideration of whether application of *Bruton* principles requires that Reddy be granted a new trial." *Id.* at 870.

On remand, Reddy claims that his Sixth Amendment rights were violated when extrajudicial statements given by his codefendant, who did not take the stand, were admitted into evidence at their joint trial. For the reasons stated below, the petition is granted.

## BACKGROUND

Petitioner and Cheryl Christenson were arrested for the murder of Ivan Zapata Enau on April 4, 1978. Because the homicide was allegedly committed in the course of an attempted robbery, the defendants were charged with second degree, or felony, murder under New York Penal Law (N.Y.P.L) § 125.25[3] [1] (McKinney's 1987). Christenson made three extrajudicial statements concerning her involvement in the crime, and Reddy made one extrajudicial statement concerning his involvement in the crime.

Reddy made a pre-trial motion for severance under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), because the State intended to introduce Christenson's statements which would inculpate him.[2] The court denied the motion, stating:

Reddy and his co-defendant have each made almost

identical confessions detailing their acts and implicating each other. Under such circumstances, the Court of Appeals has held that the "logic" of Bruton is inapplicable (*People v. McNeil*, 24 N.Y.2d 550 [301 N.Y.S.2d 503, 249 N.E.2d 383]).[3] Moreover, until there has been a determination as to whether both confessions are admissible at trial, the motion for a severance is denied. The motion may be renewed after such a determination if there has been an order granting suppression of one statement.

Reddy then moved to suppress his statement on the grounds that it was coerced and obtained through deception, resulted from an illegal arrest, and was taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The court denied Reddy's suppression motion, finding that his statement was voluntarily made, the police had probable cause to arrest him, and he had knowingly and intelligently waived his *Miranda* rights. Christenson's pre-trial motion to suppress her statements was also denied. Accordingly, the two were tried together in New York State Supreme Court.

The trial took place in 1979. The State introduced both defendants' statements. The jury was instructed to consider each statement only against the defendant who

---

1. Section 125.25[3] provides that a person is guilty of felony murder when "[a]cting either alone or with one or more other persons, he commits or attempts to commit robbery ..., and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants[.]"

2. In *Bruton* the defendant was implicated in the crime by his codefendant's extrajudicial confession, which was admitted into evidence at their joint trial with a limiting instruction. Since the codefendant did not testify, Bruton could not attack that confession by cross-examination. Recognizing that the codefendant's confession was inevitably suspect because of the motivation to shift the blame to Bruton, and that it was

"devastating" to Bruton's defense, the Court held that Bruton's inability to attack the confession violated his rights under the confrontation clause of the Sixth Amendment. *Bruton, 391* U.S. at 135–36, 88 S.Ct. at 1627–28.

3. In *McNeil* the defendant himself had confessed and his confession "interlocked" with and supported the confession of his codefendants. The court found there was no *Bruton* violation: " 'Where the jury has heard not only a codefendant's confession but the defendant's own confession no such "devastating" risk attends the lack of confrontation as was thought to be involved in *Bruton*.' " *McNeil*, 24 N.Y.2d at 553, 301 N.Y.S.2d 503, 249 N.E.2d 383, quoting *United States ex rel. Catanzaro v. Mancusi*, 404 F.2d 296, 300 (2d Cir.1968).

had made it.[4] Reddy did not have the opportunity to attack Christenson's statements by cross examination because she did not testify.[5] After the jury retired to deliberate, it asked to hear Christenson's and Reddy's statements. A few hours later, it again requested and heard Christenson's second and third statements. The jury ultimately convicted both Reddy and Christenson. They were both sentenced to indeterminate prison terms of 18 years to life.[6]

Reddy filed this habeas corpus petition claiming that his statement should have been suppressed because it was the product of an illegal arrest, and that the evidence of his intent to rob Enau was insufficient to sustain his conviction.[7] This court agreed with the latter claim, and granted his petition. *Reddy v. Coombe*, 85 Civ. 0572 (S.D.N.Y. May 1, 1987). The Court of

Appeals reversed, holding "[w]e view Reddy's own description of the events of April 4, taken in the light most favorable to the State, as sufficient to support the inference that he intended to assist in robbing Enau." *Reddy*, 846 F.2d at 869. The Court of Appeals remanded for determination of whether Reddy's rights under the confrontation clause of the Sixth Amendment[8] were violated by the admission of Christenson's statements at their trial.

On remand, Reddy claims that the admission of Christenson's statements violated his Sixth Amendment rights under *Bruton* and *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979),[9] because their statements did not interlock with respect to their intent to rob Enau.[10] He also claims his Sixth Amendment rights were violated under *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987),

---

4. In *Bruton* the Court recognized that a jury may not be able to follow this instruction:

[T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Compare *Hopt v. People of Utah*, supra [110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262]; *Throckmorton v. Holt*, 180 U.S. 552, 567, 21 S.Ct. 474, 480, 45 L.Ed. 663; *Mora v. United States*, 5 Cir., 190 F.2d 749, *Holt v. United States*, 10 Cir., 94 F.2d 90. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. *Bruton*, 391 U.S. at 135–36, 88 S.Ct. at 1627–28.

5. Nor did Reddy testify.

6. The Appellate Division affirmed their convictions without opinions, *People v. Reddy*, 79 A.D.2d 1116, 436 N.Y.S.2d 791 (1st Dept.1981), *People v. Christenson*, 79 A.D.2d 1115, 436 N.Y. S.2d 790 (1st Dept.1981), and the Court of Appeals denied both leave to appeal. *People v. Reddy*, 53 N.Y.2d 946, 440 N.Y.S.2d 1045, 423 N.E.2d 412 (1981), *People v. Christenson*, 53 N.Y.2d 941, 440 N.Y.S.2d 1040, 423 N.E.2d 407 (1981).

7. The intent necessary to sustain a conviction for felony murder is inferred from the intent to commit the underlying predicate felony. *People v. Gladman*, 41 N.Y.2d 123, 125, 390 N.Y.S.2d 912, 914, 359 N.E.2d 420 (1976). Thus, the State had to prove that Reddy intended to rob Enau.

8. The Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."

9. In *Parker* four justices found that the admission of interlocking confessions did not violate *Bruton* because when the defendant has himself confessed, his "case has already been devastated," 442 U.S. at 75 n. 7, 99 S.Ct. at 2140 n. 7, and the codefendant's confession "will seldom, if ever, be of the 'devastating' character referred to in *Bruton* [.]" *Id.* at 73, 99 S.Ct. at 2139.

The four remaining Justices participating in the case disagreed. They found that each case in which a non-testifying codefendant's interlocking confession was introduced should be analyzed for harmlessness of any *Bruton* error and not treated as immune from the *Bruton* rule. Justice Blackmun alone went on to find that the introduction of the interlocking confessions in the case before the Court was harmless, thereby producing a majority for affirmance of the conviction. *Id.* at 80–81, 99 S.Ct. at 2143 (Blackmun, J., concurring in part and concurring in judgment).

10. Although statements need not be identical in all respects to be interlocking, they must be "substantially the same and consistent on the major elements of the crime involved." *United States ex rel. Stanbridge v. Zelker*, 514 F.2d 45, 49 (2d Cir.), *cert. denied*, 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975); *see also United States ex rel. Ortiz v. Fritz*, 476 F.2d 37, 39 (2d Cir.) (interlocking confessions must be the same "[a]s to motive, plot and execution of the crime"), *cert. denied*, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973).

which he states should be applied retroactively to his 1979 trial.[11]

## SYNOPSIS

■ Petitioner's Sixth Amendment rights were not violated under *Bruton* and *Parker*. A review of both petitioner's and Christenson's statements shows that they differed in three respects with regard to their intent to rob Enau. Nonetheless, the statements were sufficiently interlocking to support their admission under *Bruton* and *Parker*.

However, *Cruz* applies retroactively to Reddy's collateral attack on his conviction. Under *Cruz*, the admission of Christenson's statements violated Reddy's Sixth Amendment rights. Because the error was not harmless, Reddy's petition is granted.

## DISCUSSION

A. The events according to Reddy's statement

Reddy gave his statement in response to questioning by Assistant District Attorney ("ADA") Carol Remer–Smith on April 5, 1978, the transcript of which was read to the jury.

According to Reddy:

On the afternoon of April 4, 1978, Christenson called Reddy and asked him to meet her at the Blarney Stone, a bar located on Eighth Avenue between 48th and 49th Streets in Manhattan. When petitioner arrived at the Blarney Stone, Christenson told him "that we were going to go down to rip off this guy John," a man Christenson had been dating. The defendants left the bar to meet Donald Webb, a friend of Christenson's, who provided them with a gun. The plan of action was for Christenson "to go in [first] because she knows him. She was going to ask to let me use the bathroom then we were going to come out and scare him. Then tie him up, take the money."

When the defendants arrived at John's apartment building, located at 531 West 48th Street, Christenson rang John's buzzer, but there was no answer. The two then proceeded to John's apartment, which was on the fifth floor, and knocked on his door, but again there was no answer.

While on their way down, the defendants saw Enau coming out of his second-floor apartment. Christenson (who had previously lived in the building) approached Enau and spoke briefly with him. Without communicating with Reddy, Christenson accompanied Enau out of the building and to a corner grocery store. Reddy followed them, waiting in the middle of the block while they were in the store. Christenson and Enau left the store, and returned to Enau's apartment. Reddy again followed, waiting first on the stoop of the building, and then near the stairs on the second floor landing.

The ADA asked Reddy if he knew what Christenson was intending to do with Enau:

Q  Did you have any idea what Cheryl intended to do with this Hispanic man when she went into his apartment after they came from the deli?

A  No, not really.

Q  Did you think she was going to turn a trick?

A  She probably would have tried.

Q  Do you think she was going to rip him off?

A  Probably.

Reddy denied that he and Christenson had talked about robbing anyone other than John, the intended first victim:

Q  When you talked about ripping off John did you talk about if you couldn't find him maybe seeing if there was another mark?

A  No, we didn't talk about it. This other guy just came out of his apartment.

---

**11.** In *Cruz*, the Court declined to follow *Parker*. Instead, it held that the admission of a nontestifying codefendant's confession incriminating the defendant violates his rights under the confrontation clause, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him. 481 U.S. at 193, 107 S.Ct. at 1719.

Q   Did you ever walk along the streets looking for somebody who might have a lot of money, that would be easy to take that from?
A   You mean last night?
Q   Yes.
A   No.

According to Reddy's statement, after Christenson had been in Enau's apartment for about ten minutes the door opened, and Reddy saw Enau attempting to push Christenson out of the apartment and close the door. Christenson was caught in the door. Reddy pushed the door open, punched Enau, and wrestled him to the ground. Enau got up, grabbed a large knife, and moved toward Christenson, who was holding a gun. She told Enau to stop, but he continued moving in her direction. Reddy then "grabbed Enau around the neck and ... threw him on the floor." As Enau was getting up, Christenson shot him in the face, killing him. Reddy then left the building, and Christenson soon followed.

Reddy denied taking anything from Enau's apartment.

## B.   The events according to Christenson's statements

Christenson made three different statements: the first an oral statement given to Detective Virgilio Dalsass, which he transcribed and had her sign, and the second and third in response to questioning by ADA Smith. All three statements were read to the jury.

Christenson gave the first statement in the early morning of April 5, 1978. This statement did not incriminate Reddy. She stated that Reddy was at the Blarney Stone, but that she left the bar alone. She allegedly met Enau on West 48th Street, and went with him to the grocery store, and then his apartment. Once in the apartment, Christenson placed her open pocketbook on the sink counter. When Enau saw a gun in her pocketbook, he grabbed a knife and walked towards her. She shot him.

Christenson made her second statement later that morning. This statement incriminated Reddy in the attempted robbery.

She explained that Reddy had accompanied her to the building, and that the plan was to "[g]et some money." The ADA asked "Did you have any idea from whom you were going to get the money?" Christenson responded "No, that's why Timmy and I got together because we weren't sure, we didn't know who."

In this second statement, Christenson said she met Enau while on the way to John's apartment with Reddy. Enau propositioned her, but she declined. She and Reddy then went to John's building. Christenson went up to John's apartment while Reddy stayed in the lobby. Coming down from John's apartment, she met Enau. He again propositioned her, and she accepted. Reddy saw her go into Enau's apartment. As in her first statement, Christenson claimed that Enau came toward her with a knife after he saw the gun in her pocketbook. This time she said that after she shot Enau, Reddy came into the apartment. He panicked, and ran out of the apartment.

Christenson said that Reddy might have stolen Enau's wallet:

I didn't take the wallet. Then somebody else said the wallet is gone, okay. Maybe Timmy's got it but I didn't take his money.

\*      \*      \*      \*      \*      \*

I know he couldn't have taken the wallet, unless I just didn't see it.

Christenson made her third statement in the evening of April 5, 1978, after being arrested and told of the substance of Reddy's statement:

ADA   We have given you other information which was supplied to us by Timothy Reddy, is that correct?
Cheryl   Timothy Reddy, yes.
ADA   Having listened to what we had to say, Cheryl, is there anything that you want to add or change about when Timmy came into the room—of the man who got shot.

Christenson then changed her story with respect to the timing of Reddy's struggle with Enau:

I went to the store, with the man. I don't know if the man had money or not. I know he had enough to pay for what he bought. And we went up to the house and that's when Timmy came in. That is right, that is when Timmy came in, you know, seriously that's when Timmy came in.

ADA Timmy came in the apartment or the building?

Cheryl Yeah because I was going into the apartment with the man and I guess the man tried to force or jump on me and Timmy got him in a headlock.

ADA Before you got in, before you got in the apartment?

Det[12] As you got—

Cheryl No, as we went in, as I went in Timmy jumped through the door and got the man on the other side of the room and that's when the man grabbed the knife. Timmy backed off and I grabbed the gun out of my pocketbook and that's when it toppled it over with my identification.

She also reiterated that she and Timmy did not have a specific target in mind:

ADA That afternoon did you and Timmy talk about uh ripping off somebody getting, getting money from someone?

Cheryl Oh yes, we always said things like that.

ADA Did you talk about it that afternoon?

Cheryl Most likely. Most likely, because we always talked about it.

ADA Did you talk about er—

Cheryl Not that we did it, but we always talked about it.

ADA Did you talk about getting money from John?

Cheryl Um, yeah, but it was only a fantasy because you know John doesn't keep that money in the house always.

ADA Did you, did you talk about er finding somebody else when you couldn't find John?

Cheryl Finding somebody else?

ADA Yeah, to get money from.

Cheryl No, but it wasn't a [inaudible] thing because it wasn't something that neither [sic] one of us expected. Seriously, neither one of us expected er to jump on any one particular person ...

\* \* \* \* \* \*

ADA ... All right now, then you told Don (Webb) that you were going "to get someone."

Cheryl Uh, huh.

ADA What did you mean by, by those words?

Cheryl In other words that I was going to take somebody off, with somebody that's all. I didn't even know who ...

C. Comparison of Reddy's and Christenson's statements

Comparing these statements, it is apparent that they interlocked in several key respects. As the Court of Appeals stated in its 1983 dismissal of Christenson's habeas corpus petition, "Both recount their meeting in the bar, their journey to John's apartment, their sighting of Enau, her ascent to his apartment and the hasty departure after the shooting." *Christenson v. Headley*, No. 82–2289, slip op. at 3 (2d Cir. Feb. 18, 1983), *cert. denied*, 464 U.S. 835, 104 S.Ct. 120, 78 L.Ed.2d 119 (1983).[13]

The statements did differ in three respects with regard to their intent to rob Enau: (1) Christenson stated that Reddy might have taken Enau's wallet, while Red-

12. Detective Dalsass was also present.

13. Christenson's habeas petition alleged that her statement did not interlock with Reddy's, and admission of his statement thus violated her right of confrontation under *Bruton*. Specifically, she argued that her statement and the physical evidence introduced at trial only revealed her intent to commit an act of prostitution with Enau, while Reddy's statement evinced their intent to commit robbery. Thus, she claimed, the jury must have relied on Reddy's statement in finding that she intended to rob Enau. The Court of Appeals disagreed, finding that Christenson's own statements revealed her intent to rob Enau.

Accordingly, the court did not have to determine whether the statements interlocked with respect to Reddy's intent to rob Enau. Thus, *Christenson* is not dispositive of Reddy's claim.

dy denied taking anything from Enau's apartment; (2) Christenson stated that Reddy fought Enau as she entered Enau's apartment, while Reddy claimed that he did not come to her defense and enter Enau's apartment until about ten minutes later, after Enau attempted to push Christenson out the door; and (3) Christenson stated that they did not have a specific victim in mind, while Reddy maintained that the plan was to rob John.

The admission of Christenson's statements, however, did not violate Reddy's rights under *Bruton*. The limiting instruction given by the trial court "will avoid a *Bruton* confrontation issue unless the admitted evidence is 'clearly inculpatory' as to the complaining co-defendant and is 'vitally important to the government's case.'" *United States v. Rubio*, 709 F.2d 146, 155 (2d Cir.1983), quoting *United States v. Wingate*, 520 F.2d 309, 313 (2d Cir.1975), *cert. denied*, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1976), quoting in turn *United States v. Catalano*, 491 F.2d 268, 273 (2d Cir.), *cert. denied*, 419 U.S. 825, 95 S.Ct. 42, 42 L.Ed.2d 48 (1974).

Christenson's statement that Reddy might have taken the wallet was mere speculation. Thus, it was not clearly inculpatory of Reddy, nor could it have been vitally important to the State's case.[14]

Reddy argues that Christenson's statement that he struggled with Enau as she entered Enau's apartment damaged his defense because it describes "a time sequence more readily supporting an inference of an attempted robbery" than his version, which he claims supports an inference that he acted in defense of Christenson. (Memo in support, p. 14). Standing alone that argument would have considerable force, but here the significance of the time Reddy entered the apartment is greatly diminished by the fact that both defendants' statements agreed that (whenever it was) Reddy entered at the time Enau was forcing Christenson. She stated that Reddy entered the apartment when "the man tried

to force or jump on me and Timmy got him in a headlock." Thus, her statement is consistent on the significant point, which is that it supports the inference that Reddy acted to defend her. Accordingly, the time-sequence discrepancy did not materially harm Reddy's defense.

Reddy claims that Christenson's statement that they did not have a specific victim in mind supported the State's argument at trial that he intended to rob Enau. As the Court of Appeals recognized,

> The implication of this statement was that Reddy and Christenson meant to rob any plausible victim. While this is entirely consistent with Reddy's belief that Christenson probably meant to rob Enau when he fortuitously appeared on the scene, and with Reddy's actions that appeared to be in support of the robbery attempt, Christenson's statement was more explicit with respect to an essential element of the offense charged than any evidence the State presented against Reddy. *Reddy*, 846 F.2d at 870.

However, Reddy, at one point in his statement, also implied that he shifted to Enau his intent to commit a robbery:

> Q When you talked about ripping off John did you talk about if you couldn't find him maybe seeing if there was another mark?
>
> A No, we didn't talk about it. This other guy just came out of his apartment.

Moreover, Reddy stated that he thought Christenson would "[p]robably" try to rob Enau.

Because Reddy's statement implied that he intended to rob Enau, the statements were sufficiently interlocking under *Bruton* and *Parker* to support their admission.

In *United States ex rel. Duff v. Zelker*, 452 F.2d 1009 (2d Cir.1971), *cert. denied*, 406 U.S. 932, 92 S.Ct. 1807, 32 L.Ed.2d 134 (1972), Duff was convicted of first degree attempted robbery, first degree attempted grand larceny, and two counts of second degree assault for his participation in the

---

**14.** Reddy's claim that the prosecutrix ignored the trial court's limiting instruction by highlighting Christenson's statement about the wallet in her closing statement is barred by his counsel's failure to object. *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

attempted robbery of a liquor store. Duff signed a statement in which he admitted to riding in a car with his codefendants to the liquor store, but claimed that " 'he walked the other way,' away from the liquor store, while [two of his codefendants] attempted to rob it." *Id.* at 1010. "Two detectives testified to oral statements made by Duff to the effect that he had agreed to participate in the robbery and that he acted as a 'look-out,' standing 'a door or two away' from the liquor store." *Ibid.* Two codefendants stated that Duff "walked toward the liquor store, and returned to the car after the attempt had been perpetrated." *Ibid.* The Court of Appeals rejected Duff's claim that the admission of his codefendants' statements violated his rights under *Bruton.*

> The statements were similar to Duff's own confessions, written and oral, which placed him at the scene with a fair implication of knowing participation ... In the light of Duff's undisputed presence at the scene, Ferguson's and Hill's statements were not a "vitally important part of the prosecution's case" against him. See *Frazier v. Cupp,* 394 U.S. 731, 735, 89 S.Ct. 1420 [1423], 22 L.Ed.2d 684 (1969); *United States ex rel. Nelson v. Follette,* 430 F.2d 1055 (2d Cir.1970). A limiting instruction as that given here may be "adequate to protect appellant's constitutional rights" notwithstanding *Bruton.* See *United States ex rel. Nelson v. Follette, supra,* 430 F.2d at 1059; *United States v. Cusumano,* 429 F.2d 378, 381 (2d Cir.), *cert. denied, Testa v. United States,* 400 U.S. 830, 91 S.Ct. 61, 27 L.Ed.2d 61 (1970).
>
> *Ibid.*

Since Reddy's own statement "placed him at the scene with a fair implication of knowing participation" *ibid.,* Christenson's statement was not a "vitally important part of the prosecution's case" against him. *Ibid.*

**15.** *See Linkletter v. Walker,* 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 1734, n. 5, 14 L.Ed.2d 601 (1965).

Thus, the admission of Christenson's statements was not error under *Bruton* and *Parker.*

However, the rule in *Parker* was changed by *Cruz.* Under *Cruz,* the admission of Christenson's statement was error. The only remaining question therefore, is whether *Cruz* applies retroactively to Reddy's petition. In other words, does *Cruz* apply to cases, such as this one, where the judgment is final, i.e., the conviction has been rendered, the availability of appeals exhausted, and the time for petitioning for *certiorari* elapsed,[15] and the defendant seeks collaterally to challenge his conviction by a writ of habeas corpus?

Before answering that question it is helpful to turn first to the *Cruz* decision.

### D. The *Cruz* decision

In *Cruz* two brothers, Eulogio and Benjamin Cruz, each confessed to a murder. Their confessions were introduced at their joint trial, and the trial court instructed the jury that Benjamin's confession was not to be used against Eulogio. The jury convicted both defendants. The New York Court of Appeals, following the reasoning of the plurality opinion in *Parker,* affirmed the conviction because the brothers' confessions interlocked. *People v. Cruz,* 66 N.Y.2d 61, 495 N.Y.S.2d 14, 485 N.E.2d 221 (1985). The Supreme Court reversed, declining to follow the reasoning of the plurality opinion in *Parker.*

> While "devastating" practical effect was one of the factors that *Bruton* considered in assessing whether the Confrontation Clause might sometimes require departure from the general rule that jury instructions suffice to exclude improper testimony, 391 U.S., at 136, 88 S.Ct., at 1628, it did not suggest that the existence of such an effect should be assessed on a case-by-case basis. Rather, that factor was one of the justifications for excepting from the general rule the entire category of codefendant confessions that implicate the defendant in

the crime. It is impossible to imagine why there should be excluded from that category, as generally not "devastating," codefendant confessions that "interlock" with the defendant's own confession. "[T]he infinite variability of inculpatory statements (whether made by defendants or codefendants), and of their likely effect on juries, makes [the assumption that an interlocking confession will preclude devastation] untenable." *Parker*, 442 U.S., at 84, 99 S.Ct. at 2145 (STEVENS, J., dissenting).
*Cruz*, 481 U.S. at 191, 107 S.Ct. at 1718 (brackets in original)

The Court continued:

In fact, it seems to us that "interlocking" bears a positively inverse relationship to devastation. A codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told, but enormously damaging if it confirms, in all essential respects, the defendant's alleged confession. It might be otherwise if the defendant were *standing by* his confession, in which case it could be said that the codefendant's confession does no more than support the defendant's very own case. But in the real world of criminal litigation, the defendant is seeking to *avoid* his confession—on the ground that it was not accurately reported, or that it was not really true when made ... In such circumstances a codefendant's confession that corroborates the defendant's confession significantly harms the defendant's case, whereas one that is positively incompatible gives credence to the defendant's assertion that his own alleged confession was nonexistent or false.

*Id.* at 191–92, 107 S.Ct. at 1718 (emphasis in original).

■ Thus, the Court held that

where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, see *Lee v. Illinois* [476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514], *supra* [16], the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him.

*Id.* at 193, 107 S.Ct. at 1719.

**E. Does Cruz apply retroactively?**

■ The tangled history of Supreme Court decisions regarding retroactive application of new rulings to convictions which are challenged by habeas, but were final when the new rulings were announced, is well summarized in *People v. Graham*, 140 Misc.2d 417, 531 N.Y.S.2d 172, 173–177 (Sup.Ct.N.Y.1988) (holding *Cruz* applies retroactively to a final conviction).

In short, such application to final convictions appears to be disfavored as a general matter, *see Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 1072–75, 103 L.Ed.2d 334 (1989) (plurality), but allowed where it had "a fundamental impact on the integrity of factfinding[.]" *Allen v. Hardy*, 478 U.S. 255, 259, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199 (1986). *See also Stovall v. Denno*, 388 U.S. 293, 298, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967) ("We have ... retroactively applied rules of criminal procedure fashioned to correct serious flaws in the fact-finding process at trial.") [17]

---

**16.** In *Lee* the Court stated that a codefendant's confession can be admissible against the defendant without violating his Sixth Amendment rights where it bears sufficient "indicia of reliability". *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986).

Christenson's statements do not bear sufficient indicia of reliability to justify their admission against Reddy. Her statements grew increasingly incriminating with respect to Reddy's encounter with Enau, which may have been motivated by a desire on her part to mitigate her culpability by spreading the blame to Red-

dy. *Id.* at 544–545, 106 S.Ct. at 2063–64. They also describe shifting stories, and are internally inconsistent. Moreover, respondents do not argue that Christenson's statements are sufficiently reliable to be admissible against Reddy.

**17.** In *Teague* the plurality attempted to fashion a new standard for determining the retroactivity of new rulings to final convictions. The plurality stated that a new rule should not be applied retroactively to cases on collateral review unless it met one of two exceptions. Under the first exception, a new rule should apply retroactively

Such was the case with *Bruton*. A violation of the defendant's right to confrontation goes "to the basis of fair hearing and trial", *Roberts v. Russell*, 392 U.S. 293, 294, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100 (1968), quoting *Linkletter v. Walker*, 381 U.S. 618, 639, 85 S.Ct. 1731, 1743, 14 L.Ed.2d 601 (1965), and the constitutional error "presents a serious risk that the issue of guilt or innocence may not have been reliably determined." *Id.* at 295, 88 S.Ct. at 1922. Accordingly, *Bruton* was applied retroactively to cases on collateral review. *Ibid.*

Naturally, where a decision does not announce a new rule, but simply applies established case law to slightly different facts, it applies retroactively. *Yates v. Aiken*, 484 U.S. 211, 216–17, 108 S.Ct. 534, 537–38, 98 L.Ed.2d 546 (1988).

Thus, whether *Cruz* is taken as doing "no more than reaffirm [*Bruton's* ] central proposition" and as being "indistinguishable from *Bruton* with respect to those factors that the Court has deemed relevant in this area" as it states, *Cruz*, 481 U.S. at 193, 107 S.Ct. at 1719, or as applying the confrontation clause in a way which goes to the basis of a fair hearing and trial, *Roberts*, 392 U.S. at 294, 88 S.Ct. at 1922, it must apply retroactively.

Indeed, the Supreme Court has applied *Cruz* retroactively. In *U.S. ex rel. Sanders v. Lane*, 835 F.2d 1204 (7th Cir.1987) petitioner challenged his conviction collaterally by habeas, alleging that the state trial court improperly admitted into evidence an incriminating statement of his codefendant at their joint trial. The district court denied the petition, and the Seventh Circuit affirmed. 779 F.2d 54 (7th Cir.1985). On application for a writ of certiorari, the Supreme Court vacated the judgment and remanded the case "for further consideration in light of *Cruz v. New*

*York* ". 481 U.S. 1026, 107 S.Ct. 1950, 95 L.Ed.2d 523 (1987).

*Cruz* has been applied retroactively, without discussion of the point, to habeas petitions, *see Thompson v. South Carolina*, 672 F.Supp. 896 (D.S.C.1987); *U.S. ex rel. Hanrahan v. Thieret*, 695 F.Supp. 372 (N.D.Ill.1988), although not to a conviction forming the predicate for a second-felony sentence. *People v. Kuyal*, 547 N.Y. S.2d 731 (App.Div.1989).

■■■ Since *Cruz* applies retroactively, it must be determined whether the admission of Christenson's statements was harmless error. That Reddy's own statement was sufficient to sustain his conviction is irrelevant to this determination. *Anderson v. Smith*, 751 F.2d 96, 105 (2d Cir.1984). "The test rather is simply whether 'there is a reasonable possibility that the improperly admitted evidence contributed to the conviction.' " *Id.* at 105, quoting *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1060, 31 L.Ed.2d 340 (1972). *See also People v. Hamlin*, 71 N.Y.2d 750, 758–59, 530 N.Y.S.2d 74, 77, 525 N.E.2d 719, 722 (1988) (violation of *Cruz* is harmless error when there is no reasonable possibility that the jury's assessment of the defendant was affected by the codefendants' statements).

Although Christenson's statements were not clearly inculpatory of Reddy, and were not a vitally important part of the case against him, *supra* pp. 563–64, it cannot be said beyond a reasonable doubt that they did not contribute to his conviction. Her statements were re-heard by the jury twice during its deliberations and were, as the Court of Appeals stated, "more explicit ... than any evidence the State presented against Reddy." 846 F.2d at 870.

## CONCLUSION

Christenson's and Reddy's statements were sufficiently interlocking to support their admission under *Bruton* and *Parker*.

when it "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe[.]' " *Teague*, 109 S.Ct. at 1075, quoting *Mackey v. U.S.*, 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (separate opinion of Harlan, J.). Under the second exception, a new rule

should apply retroactively if it "requires the observance of 'those procedures that ... are "implicit in the concept of ordered liberty[.]" ' " *Ibid*, quoting *Mackey*, 401 U.S. at 693, 91 S.Ct. at 1180 (separate opinion of Harlan, J.), quoting in turn *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).

However, under *Cruz,* which applies retroactively to Reddy's collateral attack on his conviction, the admission of Christenson's statements violated Reddy's Sixth Amendment right to confront witnesses against him. Because that error was not harmless, Reddy's petition is granted.

The State is directed to release Reddy unless within ninety days from the date of this order the State begins new trial proceedings against him.