Timothy REDDY, Petitioner–Appellee,

v.

Phillip COOMBE, Superintendent, of Eastern Correctional Facility, and Robert Abrams, Attorney General of the State of New York, Respondents–Appellants.

No. 17, Docket 90–2079.

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1990.

Decided Oct. 5, 1990.

**48**

Henriette D. Hoffman, The Legal Aid Soc., Federal Defender Services Unit, New York City, for petitioner-appellee.

David J. Mudd, Asst. Dist. Atty., New York County, New York City (Robert M. Morgenthau, Dist. Atty., New York County, Marc Frazier Scholl, Asst. Dist. Atty., New York City, of counsel), for respondents-appellants.

Before KAUFMAN, WINTER and MINER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The right to confront and cross-examine witnesses at a trial has long been recognized as essential to the determination of truth. These safeguards, guaranteed by the Sixth Amendment, are fundamental to advancing our society's goal of a criminal justice system in which the reality as well as the perception of fairness prevails.

With these principles in mind, this Court considers, for the second time, the propriety of Timothy Reddy's felony murder conviction. *Reddy v. Coombe*, 846 F.2d 866

(2d Cir.), *cert. denied*, 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 334 (1988). Earlier, after concluding Reddy's jury verdict was supported by ample evidence, we remanded for a determination whether his Sixth Amendment rights had been violated. On remand, Judge Stanton found Reddy had been denied his right to appropriate confrontation. Since Reddy was not afforded the opportunity to challenge the veracity of his non-testifying codefendant's extrajudicial statements, their admission into evidence deprived him of a fair trial. *Reddy v. Coombe*, 730 F.Supp. 556 (S.D.N.Y.1990).

We agree with the result, but on grounds different from the district court.

## I.  BACKGROUND

Reddy and his codefendant, Cheryl Christenson, were tried jointly in a New York state court for killing Ivan Zepata Enau on April 4, 1978. Because the homicide allegedly occurred in the course of an attempted robbery, the defendants were charged with second degree felony murder under New York Penal Law § 125.25(3) (McKinney 1987).

The State presented its case primarily through the testimony of law enforcement agents, individuals who had observed or conversed with the defendants on the day of the murder, and statements made by Reddy and Christenson, which were introduced by the investigators who received them. The jury was instructed to consider each admission only against the party who made it. The defendants did not testify and called no witnesses.

### A.  REDDY'S VERSION

Reddy's account of the events leading to the murder, as related to Assistant District Attorney ("ADA") Carol Remer–Smith, revealed that on the afternoon of April 4, 1978, Reddy and Christenson met at a drinking establishment on Eighth Avenue between 48th and 49th Streets in Manhattan. During this meeting Christenson described her plan to rob John, a man whom she had been dating: She and Reddy would

go to John's home and accost him with a gun.

Later that evening, the two proceeded to John's fifth floor apartment at 531 West 48th Street. After determining he was not at home, they decided to leave. As they were descending the stairway they saw Enau, an individual not known to Reddy, exiting his second floor apartment. Christenson, who had lived in the building, approached Enau and spoke with him briefly. Without communicating with Reddy, she accompanied Enau to a corner grocery store and back to his home. Reddy did not join the others; rather, he waited on a landing near Enau's apartment.

Based on his knowledge of Christenson's past, Reddy assumed she was either attempting to engage in an act of prostitution or was trying to rob Enau. Reddy denied to the ADA that he and Christenson discussed robbing anyone other than John, the intended first victim:

> Q. When you talked about ripping off John did you talk about if you couldn't find him maybe seeing there [sic] was another mark? . . .
>
> A. No, we didn't talk about it. This other guy [Enau] just came out of his apartment.
>
> Q. Did you ever walk along the streets looking for somebody who might have a lot of money, that would be easy to take that from? . . .
>
> A. No.

Reddy claimed Christenson was in the apartment for about ten minutes when he saw the door open and Enau attempt to push her outside. At that time Reddy came to Christenson's aid by attacking Enau. When Enau approached Christenson with a knife, she fired her gun, killing him.

Reddy denied taking anything from Enau. His narrative was consistent with his defense that the plan to commit a robbery ended when he discovered that John was not at home.

## B. CHRISTENSON'S STATEMENTS

Christenson was interviewed on three separate occasions shortly after the murder, first by Detective Virgilio Dalsass and later by the ADA. As time passed, her declarations increasingly incriminated Reddy.

Her first statement was made during the early hours of the morning following the incident. In this version, she did not incriminate Reddy. She stated she left the bar alone, met Enau on West 48th Street and returned home with him. Once inside, Enau saw her gun and threatened her with a knife. Christenson killed him in self defense.

Her second statement was given several hours later. This time she asserted Reddy accompanied her to John's apartment. Not finding him at home, they departed. She encountered Enau on the street and later went to his residence. Again, she claimed Enau attempted to attack her with a knife. Following the shooting, Reddy quickly entered the apartment, panicked, and left.

During this account Christenson claimed she and Reddy had not agreed on one robbery target. She also indicated Reddy might have stolen Enau's wallet. She stated, in response to questions posed by the ADA:

> I didn't take the wallet. Then somebody else said the wallet is gone, okay. Maybe Timmy's got it but I didn't take his money.
>
> I know he couldn't have taken the wallet, unless I just didn't see it.

These replies constituted the only evidence at trial that suggested Reddy might have stolen property.

Christenson's third and final statement was made after the ADA informed her of the substance of Reddy's remarks and asked if she "want[ed] to add or change [her testimony] about when Timmy came into the room." She responded by claiming Reddy immediately followed her into Enau's apartment, an allegation inconsistent with her previous accounts. She reiterated that she and Reddy had no specific victim in mind.

## C. EARLIER PROCEEDINGS

Prior to the state court trial, Reddy moved for a severance on the ground that admission of Christenson's statements at a joint trial would be unduly prejudicial to his defense. This motion was denied. Reddy was eventually convicted of second degree felony murder and sentenced to eighteen years to life in prison. His conviction was summarily affirmed, *People v. Reddy,* 79 A.D.2d 1116, 436 N.Y.S.2d 791 (1st Dept. 1981), and leave to appeal to the New York Court of Appeals was denied, 53 N.Y.2d 946, 440 N.Y.S.2d 1045, 423 N.E.2d 412 (1981).

After filing several habeas corpus petitions in federal court, see *Reddy v. Coombe,* 846 F.2d at 868, the district court ordered the state to release or retry Reddy because insufficient evidence supported his conviction. We disagreed, *id.* at 870, but remanded the case to Judge Stanton to consider whether *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which bars admission of a nontestifying codefendant's incriminating confession at a joint proceeding, required a new trial.

Upon remand, the district court again granted Reddy's habeas corpus petition. It determined admission of Christenson's testimony did not violate *Bruton* since it substantially overlapped with Reddy's own statement, thus falling within the interlocking confession exception established by *Parker v. Randolph,* 442 U.S. 62, 74–75, 99 S.Ct. 2132, 2139–2140, 60 L.Ed.2d 713 (1979). The court, however, also considered the implications of *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). *Cruz* eliminated the *Parker* exception, but was decided after Reddy's conviction had become final. Judge Stanton concluded that *Cruz* applied retroactively to cases on collateral review and reversed Reddy's conviction. The State appeals this decision.

## DISCUSSION

■ The gravamen of Reddy's complaint is that the jury improperly considered Christenson's statements when finding him guilty of felony murder. He argues that since Christenson did not testify and her statements were properly utilized only in determining her own guilt, use of her testimony at Reddy's trial violated his constitutional right to confrontation. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

In *Bruton,* the Supreme Court fashioned a prophylactic rule to ensure the Sixth Amendment's fair trial guarantee. It found that during a joint trial, a judge's instruction to a jury not to consider a codefendant's incriminating confession against another defendant is unlikely to be effective. Admission of such untested evidence raises grave potential for error since its impact is often disproportionately "devastating to the defendant." *Id.* at 136, 88 S.Ct. at 1628. Denying the defense the opportunity to cross-examine the maker of the statement adds to the serious possibility that an accused may be improperly adjudged guilty. Accordingly, reversal is required when a non-testifying codefendant's confession incriminates a defendant against whom it is not properly admissible.

The "interlocking confession" exception to the *Bruton* rule, however, instructs that when a defendant's own inculpatory declarations overlap with those of a codefendant, the "possible prejudice" resulting from the jury's failure to follow limiting instructions does not require exclusion of testimony. *Parker,* 442 U.S. at 74–75, 99 S.Ct. at 2139–2140. When the statements of both parties confirm, in all material respects, the elements of an alleged offense, admission of a codefendant's confession is permissible since there is a heightened indicia of reliability and it "will seldom, if ever, be of the 'devastating' character referred to in *Bruton.*" *Id.* at 73, 99 S.Ct. at 2139.

The *Parker* rationale was severely undercut by *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), which eliminated the interlocking confession exception. Justice Scalia explained: "It seems to us illogical ... to believe that codefendant confessions are less likely to be taken into account by the jury the more they are corroborated by the defendant's

own admissions; or that they are less likely to be harmful when they confirm the validity of the defendant's alleged confession." *Id.* at 193, 107 S.Ct. at 1719. Before assessing the *Cruz* error posed by the presentation of Christenson's statements at Reddy's trial, however, we must consider whether Reddy's rights were violated under *Parker*, the rule governing on direct appeal.

■ The *Parker* line of authority teaches that statements interlock if they are "substantially the same and consistent on the major elements of the crime involved." *United States ex. rel. Stanbridge v. Zelker*, 514 F.2d 45, 49 (2d Cir.), *cert. denied*, 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975). And, we are aware, confessions need not be identical to qualify as interlocking. *Tamilio v. Fogg*, 713 F.2d 18, 21 (2d Cir.1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984); *United States ex rel. Ortiz. v. Fritz*, 476 F.2d 37, 39 (2d Cir.), *cert. denied*, 414 U.S. 1075, 94 S.Ct. 591, 38 L.Ed.2d 482 (1973).

Accordingly, the State was required to prove beyond a reasonable doubt that Reddy specifically intended to rob Enau. New York Penal Law §§ 20.00, 110.00, 125.25(3). If the testimony was not consistent on this crucial factor, the statements did not interlock.

Judge Stanton found the testimony substantially overlapped on all material elements of the crime alleged and therefore satisfied the *Parker* test. Conflicting testimony concerning the precise timing of Reddy's entrance into Enau's apartment was not significant, he reasoned, since both statements confirmed that Reddy entered the apartment following a struggle and assisted Christenson in her defense. Christenson's suggestion that Reddy might have taken the wallet was "mere speculation," not clearly inculpatory of Reddy, and her testimony that their scheme was not restricted to robbing John was basically the same as Reddy's own account. The district court concluded Reddy's declaration that "[t]his other guy [Enau] just came out of his apartment" established the crucial element of intent to rob.

We cannot agree with the district court's assessment of the interrelationship of these statements. At best, only two of Christenson's accounts interlock with Reddy's. Her first declaration did not mention Reddy's presence. And, as we noted when this case was considered for the first time, Christenson's second and third statements were far more explicit on the essential intent element than any other evidence presented by the State. *Reddy v. Coombe*, 846 F.2d at 870.

Finding intent to rob Enau from Reddy's vague comment, "[t]he other guy just came out of his apartment," is a thin reed upon which to hang a felony murder conviction. Christenson's statements provided much stronger support for the crucial inferences. For example, her interview with the ADA, which was twice read to the jury, included the following:

> Q. Did you have any idea from whom you were going to get the money?
>
> A. No, that's why Timmy and I got together because we weren't sure, we didn't know who.

This claim, among others, indicates Reddy and Christenson meant to rob any plausible victim. Under the circumstances presented, it is likely that admission of this testimony had the "devastating impact" *Bruton* was designed to guard against.

The precise timing of Reddy's entrance into Enau's apartment may also have greatly influenced the jury's finding. Significantly, it was not until Christenson made her third statement, after learning Reddy had spoken with the ADA, that she claimed Reddy immediately followed her into the victim's home. This account strongly supported the conclusion that the two acted in concert to rob Enau.

As for the theft of the wallet, Christenson's statement was the only intimation that Reddy might have stolen anything. Although falling short of an accusation, her suggestion that "maybe Timmy took it" contradicts Reddy's flat denial. This conflicting testimony left the jury to speculate about what precisely happened. Inconsistent allegations such as these cry out for cross-examination of the witness to

clarify the fact finder's understanding of the evidence presented.

We, of course, acknowledge our inability to ascertain the weight the jury gave these statements. Since Christenson's testimony provided the only significant evidence on the crucial intent element of the charged offense, we believe the statements did not interlock. The risk that Reddy was convicted on unreliable evidence is too great to ignore. Our conclusion that the testimony was improperly admitted under the *Bruton* and *Parker* decisions renders any discussion of the *Cruz* retroactivity question irrelevant.

■ Admission of Christenson's statement was not harmless error since there is a reasonable possibility that the evidence complained of contributed to Reddy's conviction. *Holland v. Scully*, 797 F.2d 57, 67 (2d Cir.), *cert. denied*, 479 U.S. 870, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986). As we have indicated, her statements were far more explicit on the intent element and added significant weight to a weak case.[1] Multiple use of Christenson's statements during the prosecution's opening and closing argument all but ensured they contributed to the jury's verdict. *See Scully*, 797 F.2d at 68.

■ Finally, Christenson's allegations lack the particularized guarantees of reliability required for their admission as substantive evidence against Reddy under the narrow exception to the Confrontation Clause recognized in *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). The fact that all three statements differ substantially in their scope and became significantly more incriminating after Christenson was informed of Reddy's declarations support this conclusion.

Admission of Christenson's inconsistent and unreliable testimony at Reddy's trial

created an unacceptable risk that the jury might have considered her statements in adjudging him guilty. The trial court's limiting instruction, as Learned Hand once described it, was a "recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else." *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir.), *cert. denied*, 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932). Reddy's inability to attack the credibility of Christenson's statements through cross-examination was fatal to his defense, and undercut the fairness of his trial.

Accordingly, we affirm the district court's decision to grant Reddy's writ of habeas corpus on the grounds we have set forth.

---

1. This Court's earlier determination that there was sufficient evidence to support Reddy's conviction does not alter this conclusion. When assessing a sufficiency claim, "a federal habeas court is required to consider the trial evidence in the light most favorable to the State, upholding the conviction if '*any* rational trier of fact' could have concluded beyond a reasonable doubt that Reddy had the required intent."

*Reddy v. Coombe*, 846 F.2d at 869 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in the original)). Under a *Bruton* analysis, however, the question is whether the codefendant's statement was crucial to the prosecution and devastating to the defense, not whether a rational jury could find petitioner guilty of the crime under the evidence presented.