OPINION OF THE COURT
Simons, J.
Defendants and another, Billy Joe Green, have been found guilty of murdering defendant Brown’s wife, Susan. All three executed written statements confessing to their parts in the crime and the statements were received in evidence during their joint trial. Only defendant Brown testified. He repudiated his statement, claiming that it was obtained illegally and as the result of psychological coercion. Defendants Hamlin and Brown now appeal, contending that because statements of nontestifying codefendants were received in evidence they were denied their constitutional right to confrontation (US Const 6th Amend).
In Bruton v United States (391 US 123), the Supreme Court determined that the statement of a nontestifying codefendant implicating a defendant could not be received in a joint trial without violating the Confrontation Clause because, notwithstanding instructions to the jury that it must not be considered as evidence of guilt against the defendant, the danger of *756 misuse was too great to be constitutionally permissible. This was so, the court said, not only because the incriminations were "devastating” to the defendant but also because their credibility was suspect when the codefendant accomplice did not testify and thus was not subject to cross-examination. For a time, the courts recognized a limited exception to the Bruton rule in cases in which the confession of the defendant and the codefendant "interlocked” (see, People v Cruz, 66 NY2d 61, 69-72; People v McNeil, 24 NY2d 550; Parker v Randolph, 442 US 62 [plurality opn]). They did so in the belief that the dangers recognized in Bruton were minimized in the case of interlocking confessions because the codefendant’s statement could not be "devastating” to a defendant who had confessed to substantially similar events and because jury consideration of the codefendant’s statement would be minimized if defendant himself had confessed to the same facts. The trial court relied on the exception in this case and admitted the statements of the three defendants. The exception for interlocking confessions has now been rejected by the Supreme Court (see, Cruz v New York, 481 US —, 107 S Ct 1714, reversed on remand 70 NY2d 733) and we must determine whether the trial court’s ruling constituted harmless error.
Constitutional error may be harmless only if it is harmless beyond a reasonable doubt, that is, there is no reasonable possibility that the erroneously admitted evidence contributed to the conviction (Schneble v Florida, 405 US 427, 431; Chapman v California, 386 US 18, 24; People v Almestica, 42 NY2d 222, 226; People v Crimmins, 36 NY2d 230, 237). In making that determination, the court considers two discrete factors: (1) the quantum and nature of the evidence against defendant if the error is excised and (2) the causal effect the error may nevertheless have had on the jury (see, People v Crimmins, supra, at 240). In the appeals before us, we need not evaluate the first factor because the codefendants’ statements were not admitted as substantive evidence against the defendants; they claim only that receipt of the codefendants’ statements was unacceptably prejudicial.
I
We turn then to the facts.
The People submitted evidence at trial that in the winter of 1982-1983 defendant Brown was having serious problems with his wife and that he devised a plan to solve these problems, *757 and also to obtain substantial life insurance proceeds, by killing her. For that purpose, he contacted defendant Hamlin, a friend who had worked with him at one time and who knew his wife, and he offered Hamlin $5,000 to kill her. Hamlin agreed but subsequently lost his nerve and brought Billy Joe Green into the plan to help him. Brown offered to pay Green $5,000 also if he and Hamlin did the job.
On the morning of February 2, 1983 the three met at a local restaurant for breakfast and completed their plans. After eating, Hamlin and Green left the restaurant and went to the Brown apartment where they visited with Susan for a short time and then stabbed her to death. Her body, when found, had approximately 30 knife wounds.
The prosecutor’s evidence at trial consisted of defendants’ statements, several items of tangible evidence and testimony from several witnesses who related Brown’s activities on the morning of the killing and his motive for killing his wife. These witnesses established that Susan Brown had elected to take out an insurance policy through her employer which paid $110,000 to her husband upon her accidental death, that shortly before her death Brown told others that he expected to come into about $100,000 and that he intended to use the money to buy an expensive Corvette automobile and move to Florida to be with a girlfriend and a child she had by him. The People also introduced evidence of Brown’s other matrimonial infidelities and his admissions to others that his wife had caught him "messing around”.
The role of Hamlin and Green in the killing was confirmed by recovery of the bloodstained knives used in the crime from locations they identified, by evidence that their clothes contained human blood stains not inconsistent with Susan’s blood, and by evidence that threads similar to those in Susan’s sweater and hair similar in nature to her hair were found on Hamlin’s clothes. There was also evidence that fibers consistent in type with those in Green’s pants were found on the victim’s pants.
Independent witnesses corroborated that the three men had eaten breakfast together the morning of the crime and that Hamlin had tried to contact Brown at work later in the morning, apparently to signal him that the killing had been completed.
The police interviewed Brown after the crime was discovered but he denied any part in it. They subsequently obtained *758 oral and written confessions from Hamlin and Green, however, setting forth in minute detail their parts in the crime and inculpating Brown.[1] On February 3, the day after the homicide, Brown came to the police station with his father and his two brothers-in-law to recover property the police were holding. The police questioned him again at that time and obtained a written statement in which he acknowledged his role in the crime. His statement was read by one of the detectives to Brown’s father and brothers-in-law in his presence and he was asked if it were true. Both brothers-in-law testified at the trial that defendant acknowledged to them that it was. Brown did not call his father at trial to contradict them.
II
When considering harmless error in a Bruton case, the court must determine on the basis of its own reading of the record the probable impact of the codefendant’s admissions on the "minds of an average jury” and whether they were sufficiently prejudicial to defendant to require reversal of the conviction and a new trial (see, Harrington v California, 395 US 250, 254). In making that assessment, we consider a number of factors, including how comprehensive defendant’s statement is and whether it satisfactorily explains his or her part in the crime without reference to the codefendant’s statement, whether it is corroborated or contradicted by other objective evidence, and whether defendant has reiterated it on one or more subsequent occasions (see, Sehneble v Florida, 405 US 427, 431, supra). If the defendant has repudiated the confession, a similar, detailed statement by a codefendant may be particularly prejudicial to the minds of a jury instructed to decide whether defendant’s statement was voluntary (see, Cruz v New York, 481 US, at —, 107 S Ct, at 1718, supra; People v Pitts, 71 NY2d 923; cf, Schneble v Florida, supra).
ra
After considering these factors, we find no reasonable possibility that the jury’s assessment of Hamlin’s guilt was *759 affected by the statements of Brown[2] and Green. Hamlin’s written confession was detailed, complete, and internally consistent. It was supported by objective evidence establishing that Brown and Hamlin knew each other and that they were together on the day of the crime — thus confirming the bargain —and by evidence of the blood and hair similar to that of decedent which was on defendant’s clothes — confirming his participation in the killing. It was also corroborated by the recovery of Hamlin’s knife from the place where he said he had discarded it and the recovery of blood-spotted money, stolen from the Brown apartment, at a store where Hamlin stated he had spent it. Moreover, Hamlin executed written statements recounting his version of events twice and in both the facts critical to establishing his guilt were consistent. In the first statement, which related only the events in the apartment and did not refer to defendant Brown, Hamlin stated that he and Green killed Susan to obtain money which they found in her dresser drawer. The second statement included the details of Brown’s part in planning the crime and Hamlin revealed in it that the motive was payment of $5,000 from Brown. But his second statement was otherwise consistent with the first and he even repeated the same facts concerning the theft of money from Susan’s dresser drawer although he did not claim theft was the motive for the killing. Although the court submitted the issue of voluntariness to the jury, Hamlin did not directly challenge these statements by taking the witness stand and there is nothing in the record to suggest the jury did not accept his statements as voluntary and reliable. Based upon them and the objective corroborating evidence, the proof of Hamlin’s guilt was overwhelming and any error in admitting the statements of his codefendants was harmless beyond a reasonable doubt.
The case against Brown rested on his confession. The remaining evidence established a strong motive for him to want his wife dead and his efforts to establish an alibi but there was nothing to connect him to the killing except his confession. He repudiated the confession during his testimony at *760 trial, however, and the jury was instructed that it could find the statement involuntary and, if it did so, it was to disregard it.
In repudiating the statement, Brown noted that he had become so emotionally upset upon finding his wife’s mutilated body that he was taken to the hospital for treatment. He claimed that the statement, executed the next day, was made when he was still suffering from the shock of her death and after he had been implicated in the killing by the codefendants. He also claimed the police had arrested him illegally and had failed to accord him his Miranda rights. Finally, he contended that the police had induced the confession by promising a lesser charge if he cooperated in establishing the case against Hamlin and Green.
The evidence against Brown, without his confession, is not sufficient to support the jury’s verdict and, considering his broad attack on the police conduct, we cannot say beyond a reasonable doubt that the jury’s verdict that his confession was voluntary was not effected by hearing the statements of Hamlin and Green. Accordingly, Brown’s conviction must be reversed and a new trial ordered.
IV
Two other points must be addressed.
Defendant Hamlin contends that the court erred in refusing to charge the jury that if it found his statements involuntary, all physical evidence "derived as a result of those statements” must be dismissed from consideration.[3] He cited no authority for his request but in his pretrial argument urged that the tangible evidence had to be suppressed because of his unlawful arrest, citing Payton v New York (445 US 573) and Dunaway v New York (442 US 200).
In Jackson v Denno (378 US 368), the Supreme Court reviewed New York’s existing procedure for determining the voluntariness of a defendant’s statement and found that it denied defendants’ due process of law because it permitted a jury to determine voluntariness in the first instance and the jury might be influenced improperly in making that determination by its view of the reliability of the statement. The court held that to avoid this danger decisions on voluntariness *761 must be made by the trial court alone but States could, if they wished, adopt the "Massachusetts procedure” and also permit the jury to pass on the issue of voluntariness a second time after the court had first done so (id., at 378-379). In People v Huntley (15 NY2d 72), we implemented Jackson v Denno (supra), holding that New York would follow the Massachusetts procedure in the future. Noting that our prior practice of permitting juries to decide issues of voluntariness evolved from the New York Constitution’s guarantee of jury trial, we held that, in accordance with Jackson v Denno (supra), a pretrial hearing must be held by the court to consider whether defendant’s statement was voluntary and, therefore, admissible at trial, but that if the court decided that question against defendant, the issue could also be submitted to the jury for its consideration.
Following Huntley, the Legislature formalized the procedures for suppressing evidence which are now codified in article 710 of the Criminal Procedure Law. CPL 710.70 (3) provides that the "exclusive” method to suppress evidence shall be by pretrial hearing before the court. This procedure satisfies Federal constitutional requirements for admissibility of evidence (see, Jackson v Denno, supra; see generally, 4 LaFave, Search & Seizure § 11.2 [d], [f] [2d ed]). The Legislature provided a further statutory right to defendants challenging statements, however, and directed that a defendant must also be permitted to submit to the jury the issue of whether the statement was voluntarily obtained within the meaning of CPL 60.45. This statutory provision not only incorporates the Huntley "second bite” procedure for statements, but it grants even broader protection than Jackson u Denno or People v Huntley require by incorporating the statutory definition of voluntariness found in CPL 60.45 (see, People v Graham, 55 NY2d 144, esp concurrence of Wachtler, J., at 152; CPL 710.70 [3]). The Legislature enacted no similar provision authorizing juries to consider the admissibility of tangible evidence (see generally, Bacigal, A Case for Jury Determination of Search and Seizure Law, 15 U Rich L Rev 791, 808 [stating that jury consideration of search and seizure issues is a matter for the Legislature and finding, after a review of authorities, that none has enacted provisions authorizing it]).
In the matter before us, defense counsel requested generally that the jury be instructed to disregard physical evidence obtained as a result of any infirmity in securing Hamlin’s statements. He had no right to the submission of *762 that question to the jury under the Due Process Clause of the Federal Constitution or under the Criminal Procedure Law and he did not preserve for our review any question that he was entitled to such relief under the State Constitution.
Finally, inasmuch as defendant Brown will be subject to a new trial, we add that we find no merit to his claim that he was denied his 6th Amendment right to counsel. The accusatory process had not commenced at the time the statement was taken from him the day after the killing (see, People v Lane, 64 NY2d 1047, 1048; People v Ridgeway, 64 NY2d 952, 964).
We have considered defendants’ remaining points and find them without merit.
Accordingly, the order of the Appellate Division in People v Hamlin should be affirmed, and in People v Brown the order should be reversed, and a new trial ordered.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
In People v Hamlin: Order affirmed.
In People v Brown: Order reversed and a new trial ordered.

. Defendants Green and Hamlin each executed two written confessions, one detailing the events of the actual killing but omitting any mention of Brown’s promise to pay them money for the murder and another which also included details of the preliminary arrangement with Brown. Both of their confessions were received in evidence.

. Brown testified and was subject to cross-examination. Thus, there is no Bruton violation insofar as Hamlin was tried with Brown. Nevertheless, the People did not attempt to use Brown’s statement directly against Hamlin and the court instructed the jury that they could not consider his statement as evidence of the guilt of Hamlin or Green. The People concede that under the circumstances they cannot argue now that because Brown testified there was no Bruton violation.

. Defendant does not challenge the finding of the court in the Huntley hearing.