■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GILBERTO BLANCO and JULIA BLANCO, Appellants.—Consolidated appeals by the defendants Gilberto Blanco and Julia Blanco from 2 judgments (1 as to each of them) of the County Court, Westchester County (Lange, J.), both rendered May 3, 1988, convicting each of them of criminal sale of a controlled substance in the first degree, criminal possession of a controlled substance in the first degree, and criminal possession of a controlled substance in the third degree, upon jury verdicts, and imposing sentences.

Ordered that the judgments are affirmed.

The defendant Julia Blanco and her husband, the defendant Gilberto Blanco, were tried jointly before a jury and found guilty, *inter alia,* of the sale of seven kilos of cocaine on December 17, 1986.

The theory of the People's case was that the defendants were large-scale suppliers of cocaine who engaged the services of Manuel Rangel and Edwardo Coll to act as agents and couriers in the sale of the cocaine to Frank Santorsola, and thereby insulated themselves from direct involvement in the sale. Santorsola, an undercover investigator with the Westchester County District Attorney's office, had negotiated the sale with Rangel and a confidential police informant known as "the Arab".

The People's evidence demonstrated that on the morning of December 17, 1986, Rangel and Coll together with their friend Juan Irizarry, a taxi driver who had agreed to drive them from Yonkers to New Jersey that day, went to the defendants' home located in New Jersey. Julia Blanco handed Coll a shopping bag containing seven one-kilo packages of cocaine wrapped in Christmas paper, in the presence of Gilberto Blanco, Rangel, Irizarry, and the defendants' friend Theresa Maya. After receiving the cocaine, Coll and Irizarry transported it in Irizarry's vehicle to Rangel's apartment in Yonkers while the defendants, Maya, and Rangel followed them in the defendants' vehicle. While Coll, Irizarry, the defendants, and Maya waited in Rangel's apartment, Rangel met the confidential informant and together they drove to a Howard Johnson's motel in Elmsford, New York, to meet Santorsola. In the motel room, Santorsola gave Rangel a bag

containing $200,000 in cash as payment for the cocaine. Rangel placed a telephone call to his apartment speaking first to Julia and then to Irizarry whom he directed to bring the cocaine to the Elmsford Howard Johnson's motel.

Leaving the defendants and Maya in Rangel's apartment, Coll and Irizarry proceeded to Elmsford where they were met by the confidential informant in a parking lot opposite the Howard Johnson's motel. The informant instructed Coll and Irizarry to wait in an adjacent parking lot for Rangel who was bringing the money for the sale. In the interim, the sale was interrupted by backup undercover investigators from the District Attorney's office who arrested Coll and Irizarry and enlisted their cooperation in apprehending the defendants, the principals in the scheme. Simultaneously, other backup investigators, including Spanish-speaking criminal investigator Wilson Morales, arrested Rangel in Santorsola's motel room. Rangel also agreed to cooperate with the investigators.

In a series of tape-recorded telephone calls, Rangel, acting in accordance with the instructions of the investigators, stalled for time by telling the defendant Julia Blanco that the money for the sale was short, necessitating a recount. Julia Blanco responded that Rangel should hurry, but that any shortage would be from his share of the proceeds. Thereafter, Rangel placed another telephone call in which he advised Julia that he would be returning 1 of the 7 kilos because of insufficient funds and that he was sending Coll to the apartment with the proceeds of the sale of 6 kilos and the remaining unsold kilo of cocaine.

Investigators Morales and Santorsola proceeded with Coll to Rangel's apartment in Yonkers. Backup investigators who had been provided with a description of the defendants followed. Upon the investigators' instructions, Coll telephoned Julia Blanco and told her to come downstairs to collect the cocaine and money. While at first reluctant to do so, she finally agreed. Investigator Morales was a witness to this telephone conversation. Coll remained in the car while the investigators hid under a nearby car. Shortly after the telephone conversation the investigators observed the defendants and Maya enter the Blancos' vehicle. Gilberto Blanco, who was operating the vehicle, drove over to Coll's car. Coll emerged from his vehicle carrying a bag containing the proceeds of the sale and the remaining cocaine and attempted to hand it to the defendants. According to Investigator Morales, Coll simultaneously stated: "This is the two packages, one is the cocaine * * * and one is the money". Morales heard Julia Blanco respond: "No, no, no,

not here, follow us to New Jersey". He then heard Gilberto Blanco echo his wife's response saying: "Yes, follow us to New Jersey". At that point the investigators including Morales and Santorsola converged on the defendants' vehicle and arrested the occupants.

While detained at the District Attorney's office, Julia Blanco was advised by Morales, who was acting as a Spanish translator for an Assistant District Attorney, that they had tape-recorded conversations of her and Gilberto Blanco speaking with others in connection with the cocaine sale. According to Morales, Julia quickly responded: "No, no, no, he [Gilberto], never speaks on the phone, he never spoke on the phone, I was the stupid one, I was the one that spoke on the phone". Julia Blanco, however, denied any knowledge of or involvement in the cocaine transaction. Rather, she claimed that she went to Rangel's apartment on a mission of spiritual cleansing for which she was to be paid.

At the trial, Coll testified under a grant of immunity to the details of the transaction including the substance of his telephone conversation with Julia Blanco. Morales testified to the content of the tape-recorded conversations and identified the voice of the other person in the conversations with Coll as that of Julia Blanco. Other significant evidence was the testimony of a police fingerprint expert to the effect that a print of Gilberto Blanco's right little finger was found on one of the bags of cocaine.

On appeal, the defendant Gilberto Blanco contends that his guilt was not established beyond a reasonable doubt. Contrary to the defendant's contention, we find that his role in the narcotics sale was more than that of a mere bystander. Viewing the evidence in the light most favorable to the prosecution *(People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt. A rational trier of fact could have found beyond a reasonable doubt that Gilberto acted with the requisite mental culpability to commit the crimes of criminal possession and criminal sale of a controlled substance *(see, People v Dordal,* 55 NY2d 954; *People v Payne,* 135 AD2d 746; *cf., People v Vazquez,* 115 AD2d 626; *People v Reyes,* 82 AD2d 925). Gilberto Blanco's presence at all of the critical stages of the transfer of a large quantity of narcotics, the content of his statement to Coll when the latter attempted to return the unsold cocaine and proceeds of the sale, as well as the presence of his fingerprint on one of the packages of cocaine evidenced his active and intentional participation as a principal in the sale and his possession of

the narcotics. The jury was entitled to reject Gilberto Blanco's testimony and to accept the more credible testimony of the People's witnesses. Upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence *(see,* CPL 470.15 [5]).

Equally unpersuasive is the defendant Gilberto Blanco's claim that he was denied the effective assistance of counsel during trial. While with the benefit of hindsight it might be said that trial counsel may have arguably committed some errors of omission, in particular his failure to request instructions limiting the use of Julia Blanco's statements, counsel's conduct of Gilberto's defense has not been shown to be "less than meaningful" *(People v Rivera,* 71 NY2d 705, 708; *see, People v Baldi,* 54 NY2d 137, 146-147). In reviewing claims of ineffectiveness, care must be taken to avoid confusing true ineffectiveness with mere losing tactics and according undue significance to a hindsight analysis *(see, People v Baldi, supra).* At bar, defense counsel performed effectively by, *inter alia,* focusing on the weaknesses in the People's proof against Gilberto Blanco and the inconsistencies in the testimony of the People's witnesses, conducting vigorous cross-examination of the prosecution witnesses, and calling Gilberto to testify on his own behalf in an attempt to counter some of the damaging evidence presented by the People.

With respect to the defendant Julia Blanco's claim of error regarding the trial court's decision to admit into evidence the tape-recorded conversations between her and Rangel, we agree with her contention that the People failed to lay a proper foundation for the admission of those tapes into evidence *(see, People v Ely,* 68 NY2d 520, 527-528; *People v McGee,* 49 NY2d 48, 59, *cert denied sub nom. Waters v New York,* 446 US 942). Morales, who as a witness to the taped conversations in question was competent to testify as to the genuineness of the tapes *(see, People v Ely, supra),* did not testify that the tape recordings were a true, accurate, and complete record of Julia Blanco's conversation with Rangel. Rather, Morales testified that the translations and transcriptions he had made were a fair and accurate account of the tapes and the conversations. Contrary to the People's contentions, we do not find that Morales's testimony provided a sufficient foundation for admission of those tapes into evidence. Significantly, Morales's transcriptions of the subject tapes were ruled inadmissible, and the court directed that an official transcription be made.

Nevertheless, in view of the overwhelming independent evidence of the defendant Julia Blanco's guilt, we find the

error in admitting the tapes to be harmless. The substance of the taped conversations was placed on the record through the testimony of the undercover investigators who had been witnesses to the conversations and, indeed, had told Rangel what to say. In addition, Coll testified about his follow-up conversation with Julia Blanco regarding the return of the unsold cocaine and the proceeds of the sale of the other six kilos of cocaine. Thus, there is no significant probability that but for the error the jury would have acquitted the defendant (see, People v Hamlin, 71 NY2d 750, 758; People v Crimmins, 36 NY2d 230, 241-242).

We have examined the defendants' remaining contentions and find that they are either unpreserved for appellate review as a matter of law or without merit. Thompson, J. P., Rubin, Rosenblatt and Miller, JJ., concur.