=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 24
The People &c.,
            Respondent,
        v.
Assad Cedeno,
            Appellant.




            De Nice Powell, for appellant.
            Nancy Fitzpatrick Talcott, for respondent.










STEIN, J.:

        The question before us is whether the admission of a

nontestifying codefendant's redacted statement to police violated

defendant's rights under the Confrontation Clause of the Sixth

Amendment to the United States Constitution.  Because the

statement was facially incriminating, its admission was error

- 1 -

under Bruton v United States (391 US 123 [1968]) and its progeny.

Inasmuch as that error was not harmless under the circumstances

of this case, we conclude that reversal is required.

I.

The charges against defendant arose out of a large-

scale fight between two rival gangs, the Trinitarios and the

Latin Kings. The victim, Ariel Pena Rodriguez, was stabbed and

killed during the fight. Defendant was thereafter charged in an

indictment -- along with six codefendants allegedly associated

with the Latin Kings -- with murder in the second degree, gang

assault in the first degree, assault in the first degree and four

counts of criminal possession of a weapon in the fourth degree.

Prior to the incident, the victim and his friends,

including "Witness 1," were riding the subway when Witness 1 -- a

former Latin King who had joined the Trinitarios -- saw

codefendant Jason Villanueva staring at him from an adjoining

subway car. Witness 1 later observed Villanueva stroking his

face and laughing at him, which Witness 1 interpreted as a

reference to a prior incident in which Villanueva allegedly

slashed his face while defendant hit him with a cane. When the

train reached a station, the victim saw Trinitario gang members

on the platform and stepped out to greet a friend. Someone from

the group of Trinitarios then threw a bottle into the subway car

where defendant and other members of the Latin Kings were

located. The Latin Kings rushed the Trinitarios and the victim

stepped in front of Witness 1, at which point defendant, Villanueva and codefendant Ariel Casares -- who each had knives -- stabbed and beat the victim, while two other codefendants punched and kicked him.

Police present at the station when the fight began prevented anyone from leaving and requested backup. Additional officers arrived on the platform shortly thereafter, while the fighting continued. The officers separated the combatants, restored order among the approximately 100 people involved, obtained aid for the victim, and conducted identification procedures. Approximately 40 minutes after the fight began, police had potential witnesses identify the perpetrators. Numerous witnesses identified multiple offenders to different officers. Witness 1 and "Witness 2" identified defendant as one of the victim's attackers at the scene. The suspects and witnesses were then taken to the precinct, where police spent four hours confirming the identifications made at the scene. The victim was transported to the hospital, where he died.

After an extensive Wade/Huntley hearing, Supreme Court denied defendant's motion to suppress the identifications of him, rejecting his arguments that the identifications at the scene were suggestive and that the "confirmatory" identifications made later at the precinct were tainted by the first identification at the scene. Defendant also moved to sever his trial from that of Villanueva in light of the People's notice of their intention to

admit a statement by Villanueva that described defendant as "one of the Latin Kings wearing red and white trunks," and claimed that defendant "pulled out a knife and rushed the whole crowd" and then "ran over to the victim and started punching him with a small knife."  Supreme Court also denied that motion, as well as defendant's request to redact Villanueva's description of the assailants who stabbed the victim as being Latin Kings.  The court did, however, direct the People to remove the description of defendant's clothing from Villanueva's statement.

Defendant was tried jointly with codefendants Villanueva, Casares and Christian Tineo.[1]  Three eyewitnesses identified defendant as having stabbed the victim; Witness 1 and Witness 2 testified that they knew defendant as "Bambino" before the attack, from school and gang activities.  Villanueva's redacted statement was also admitted, with jury instructions that no deleted or redacted information could be considered.  When a detective testified that defendant's girlfriend at the time of the fight told him that defendant was nicknamed "Bambino," the court sustained an objection by defense counsel.  However, arguing that the objection could not be cured, counsel moved for

---

[1] Casares was found guilty of first-degree manslaughter, as a lesser included offense of murder, as well as first-degree gang assault, first-degree assault and fourth-degree criminal possession of a weapon, and was sentenced to 18 years in prison. Villanueva was found guilty of first-degree gang assault and was sentenced to 16 years in prison.  Tineo was acquitted of all charges.

a mistrial on the grounds that the testimony about the nickname was inadmissible hearsay that corroborated the testimony of Witness 1 and Witness 2. The court denied the motion and counsel declined the court's offer to give a curative instruction.

Defendant was convicted of first-degree gang assault and fourth-degree weapons possession, and was acquitted of second-degree murder and the lesser included manslaughter charge. The People dismissed three counts on which the jury deadlocked -- first-degree assault and two fourth-degree weapons possession charges. Defendant was sentenced to an aggregate term of 16 years in prison, to be followed by five years of postrelease supervision.

Upon defendant's appeal, the Appellate Division unanimously affirmed (113 AD3d 695 [2nd Dept 2014]). The Court rejected defendant's assertion that the admission of Villanueva's redacted statement violated Bruton "because the subject redaction would not have caused the jurors to 'realize that the confession refers specifically to the defendant'" (id. at 697, quoting Gray v Maryland, 523 US 185, 186 [1998]). The Court also concluded that admission of the statement of defendant's former girlfriend to the detective constituted hearsay but that the error was harmless (see 113 AD3d at 697). Regarding defendant's objection to admission of the pretrial identifications of him, the Court determined that the identifications both at the scene of the crime and at the precinct were reasonable under the circumstances

and were not unduly suggestive (see id. at 696).  A Judge of this Court granted defendant leave to appeal (24 NY3d 959 [2014]).

II.

Defendant argues that the admission of Villanueva's redacted statement violated his rights under the Confrontation Clause, as discussed in Bruton.  As this Court has previously explained, the Confrontation Clause "prohibits the use of 'testimonial' hearsay against a defendant in a criminal case, even if the hearsay is reliable, unless the defendant has a chance to cross-examine the out-of-court declarant" (People v Goldstein, 6 NY3d 119, 127 [2005], cert denied 547 US 1159 [2006]).  Introduction of a codefendant's testimony at a joint trial generally does not violate the Confrontation Clause because the codefendant "is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against [the] codefendant" (Richardson v Marsh, 481 US 200, 206 [1987]).  However, the Supreme Court has recognized a narrow exception to the general rule concerning a codefendant's confession that implicates the defendant, holding "that a defendant is deprived of his [or her] Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant" (id. at 207; see Bruton, 391 US at 135-

136).

>           The exception, or <u>Bruton</u> rule, is necessary because:

>           "[T]here are some contexts in which the risk
>           that the jury will not, or cannot, follow
>           instructions is so great, and the
>           consequences of failure so vital to the
>           defendant, that the practical and human
>           limitations of the jury system cannot be
>           ignored. Such a context is presented . . .
>           where the powerfully incriminating
>           extrajudicial statements of a codefendant,
>           who stands accused side-by-side with the
>           defendant, are deliberately spread before the
>           jury in a joint trial"

(<u>Bruton</u>, 391 US at 135-136).  In other words, the <u>Bruton</u> rule provides "that certain 'powerfully incriminating extrajudicial statements of a codefendant' -- those naming another defendant -- considered as a class, are so prejudicial that limiting instructions cannot work" (<u>Gray</u>, 523 US at 192).

<u>Richardson</u> distinguished <u>Bruton</u>, thereby further restricting the already narrow exception, for cases involving confessions that are "not incriminating on [their] face, and bec[o]me so only when linked with evidence introduced later at trial" (<u>Richardson</u>, 481 US at 208; <u>see</u> <u>United States v Lung Fong Chen</u>, 393 F3d 139, 148 [2d Cir 2004]; <u>see</u> <u>also</u> <u>Gray</u>, 523 US at 195 ["We concede that <u>Richardson</u> placed outside the scope of <u>Bruton</u>'s rule those statements that incriminate inferentially."]).  The Supreme Court reasoned that, "[w]here the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence" (<u>Richardson</u>, 481 US at 208).  Thus,

the Court held "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence" (id. at 211).

In Richardson, the Court left open the question of the admissibility of confessions "in which the defendant's name has been replaced with a symbol or neutral pronoun" (id. at 211 n 5). The Court ultimately answered that question in Gray, concluding that "Richardson . . . depend[s] in significant part upon the kind of, not the simple fact of, inference," and upheld as permissible those "statements that did not refer directly to the defendant himself [or herself] and which became incriminating 'only when linked with evidence introduced later at trial'" (Gray, 523 US at 196, quoting Richardson, 481 US at 208). In that regard, "Bruton and its progeny . . . do not construe the Confrontation Clause to demand further that a confession be redacted so as to permit no incriminating inference against the non-declarant defendant" (United States v Jass, 569 F3d 47, 60 [2d Cir 2009], certs denied 558 US 1159 [2010], 559 US 1087 [2010] [emphasis added]). Rather, the Bruton rule applies to "statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial"

(Gray, 523 US at 196 [emphasis added]).

As the Second Circuit stated in Jass, further eluciding Gray, "[t]he critical inquiry is . . . whether [a] neutral allusion [to a confederate] sufficiently conceals the fact of explicit identification [of the defendant] to eliminate the overwhelming probability that a jury hearing the confession at a joint trial will not be able to follow an appropriate limiting instruction" (Jass, 569 F3d at 61).  Redactions of a statement "in which the non-declarant defendant's name [is] replaced with 'a blank space or the word "deleted"' . . . [are] inadequate to avoid Bruton's Confrontation Clause concern" (id. at 57, quoting Gray, 523 US at 188), because such a redaction is "more likely to emphasize than to conceal the fact that the declarant has specifically inculpated someone" (Jass, 569 F3d at 59 [emphasis added]).  In contrast to "replacing a defendant's name with an obvious blank or 'deleted' reference," which is "insufficient to avoid Bruton error, the Supreme Court indicated [in Gray] that substituting neutral words might well pass constitutional muster" (id. at 57) in the absence of an indication that "th[e] confession refer[red] directly to the 'existence' of the nonconfessing defendant" (Gray, 523 US at 192).[2]  Thus, the Second Circuit articulated that a two-step

_____

[2] Similarly to the Second Circuit, we emphasize that "the substitution of neutral pronouns for redacted names" does not invariably resolve Bruton concerns (United States v Jass, 569 F3d 47, 56 n 5 [2d Cir 2009], certs denied 558 US 1159 [2010], 559 US

inquiry is appropriate in determining whether "particular redactions and substitutions . . . [are] sufficient to avoid the constitutional error identified in <u>Bruton</u>" (<u>Jass</u>, 569 F3d at 61). First, a court must examine whether a redacted statement inculpates a specific person -- such as when a statement bears "'obvious indications of alteration'" -- and, second, whether that statement "even if 'the very first item introduced at trial' would 'immediately' inculpate [the defendant] in the charged crime" (<u>id.</u> at 61-62, quoting <u>Gray</u>, 523 US at 192, 196).

This Court's decision in <u>People v Wheeler</u> (62 NY2d 867 [1984]) is entirely consistent with <u>Jass</u>; indeed, <u>Wheeler</u> anticipated both <u>Gray</u> and <u>Richardson</u>. In <u>Wheeler</u>, we recognized -- as did the Supreme Court in <u>Richardson</u> -- that, if a codefendant's "confession . . . can be effectively redacted so that the jury would not interpret its admissions as incriminating the nonconfessing defendant, it may be utilized at the joint trial" (<u>Wheeler</u>, 62 NY2d at 869). Further, as in <u>Gray</u>, we held that merely replacing a defendant's name with the word "deletion"

---

1087 [2010]). Such "substitution[s] of a neutral word for a defendant's name" are permissible only if made "in a way that resemble[] a statement that a declarant might actually have made if he [or she] had been trying to avoid specifically identifying a confederate" (<u>id.</u> at 59). In <u>Jass</u>, "the redaction of [defendant's] name from [codefendant's] confession and the substitution of neutral words such as 'another person'" was upheld because -- unlike the redacted statement at issue here -- the redaction "effectively concealed from the jury the fact that [codefendant] had 'refer[red] directly to someone'" (<u>id.</u>, quoting <u>Gray v Maryland</u>,523 US 185, 196 [1998]).

is not an effective redaction that would render admissible a codefendant's statement implicating a defendant (see id. at 869). Although there was evidence in Wheeler that a third individual participated in the crime and the jury might have "viewed [the] references in the confession as concerning this additional participant," we deemed that possibility "insufficient to eliminate the prejudice to [the] defendant from the use of [the] statement upon his trial" (id.).  Adopting reasoning nearly identical to that in Gray, we explained:  "Given that the two [defendants] were being tried for the crime together, we believe the confession could only be read by the jury as inculpating [the] defendant" (id.).  In other words, we concluded that the redacted statement was inadmissible, first, because it contained obvious indications that it was altered to protect the identity of a specific person and, second, because it would be immediately apparent that the statement, standing alone, implicated the defendant (compare Jass, 569 F3d at 61-63).

Applying those principles here, we conclude that "the admission [of Villanueva's statement] created an intolerable risk that the jury would not, or could not, follow an instruction to consider [the] redacted [statement] only against him, and not against [defendant]" (id. at 61).  We acknowledge that Villanueva's statement, as read out loud at trial, did not appear to have been obviously redacted.  When read out loud, the statement simply referred to a generic "Latin King," of which

there were many involved in the fight.  However, the manner in which the physical, written statement itself -- which was provided to the jury -- was redacted made it obvious that Villanueva expressly implicated a specific Latin King.  The identifying description of defendant was simply replaced with a large blank space, and the statement further indicated that "[t]he victim was bleeding the same Latin King [large blank space] run over to the victim and starting punching him with a small knife."  The statement therefore ran afoul of the core concern underlying the Bruton rule -- "[f]rom Bruton to Richardson to Gray, the Supreme Court's Confrontation Clause concern has been with juries learning that a declarant defendant specifically identified a co-defendant as an accomplice in the charged crime" (id. at 60).  Given that defendant was one of three codefendants sitting at the table with Villanueva, the statement powerfully implicated him.

Stated differently, the written statement was not "effectively redacted so that the jury would not interpret its admissions as incriminating the nonconfessing defendant[s]" (Wheeler, 62 NY2d at 869).  Rather, the statement, with large, "blank [spaces] prominent on its face, . . . 'facially incriminat[ed]'" a codefendant because it "involve[d] inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial" (Gray, 523 US at 196, quoting Richardson, 481 US at 209).  Any juror

"wonder[ing] to whom the blank might refer need[ed] only lift his [or her] eyes to [Villanueva's codefendants], sitting at counsel table, to find what [would] seem the obvious answer" (Gray, 523 US at 193).  In our view, the replacement of the identifying descriptors of defendant with blank spaces did not leave "the slightest doubt as to whose name[] had been blacked out, but even if there had been, that blacking out itself would have not only laid the doubt but underscored the answer" (id. at 193-194 [internal quotation marks and citation omitted]), particularly after the court instructed the jury that it was not to speculate about the redactions in any way.  The redacted statement both "indicat[ed] to the jury that the original statement contained actual names" or clearly identifying descriptors and, "even if the very first item introduced at trial[,] [it] would immediately inculpate [a codefendant] in the charged crime" (Jass, 569 F3d at 61 [internal quotation marks and citations omitted]; see Gray, 523 US at 196; Wheeler, 62 NY2d at 869).  Therefore, we conclude that its admission violated the Bruton rule.

### III.

Nor can it be said that the error was harmless.  The evidence against defendant was not overwhelming.  Three eyewitnesses identified defendant, but the testimony of Witness 1 and Witness 2, was undermined by their admitted bias. Specifically, Witness 1 testified that he hated the Latin Kings and wanted revenge on them for the prior incident in which his

face was slashed, and Witness 2 admitted that he was testifying against defendant in exchange for a favorable letter to the Parole Board.  The third eyewitness did not know defendant before the incident and did not identify him until trial -- she identified two other codefendants at the scene but then became frightened and neither identified anyone else nor participated in the identifications at the precinct.  In addition to the foregoing factors, the nature of the attack itself -- a confusing melee involving dangerous circumstances during which multiple fights were occurring at once -- left the eyewitness testimony open to challenge.

Moreover, under our state rule regarding harmless error, even if "there was overwhelming proof of the defendant's guilt, [the] inquiry does not end there . . . [, but f]urther inquiry must . . . be made by the appellate court as to whether, notwithstanding the overwhelming proof of the defendant's guilt, the error infected or tainted the verdict" (People v Crimmins, 36 NY2d 230, 242 [1975]), i.e., whether there is a reasonable possibility, in instances of constitutional error, such as that at issue here, that the error affected the verdict (see id. at 241).  There was a strong likelihood here that the jury considered Villanueva's statement as implicating defendant, thereby tainting the verdict.  First, while the trial court did instruct the jury not to consider the redactions in the statement at all, the court failed to give the critical limiting

instruction that the jury should not consider the statement itself against anyone but Villanueva (see Richardson, 481 US at 206 [admission of a codefendant's testimony at a joint trial does not violate the Confrontation Clause because the codefendant "is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against [the] codefendant" (emphasis added)]).  "[T]he law assumes that even a redacted statement will prejudice a defendant if it is considered against him" (Jass, 569 F3d at 60-61).  Absent a proper limiting instruction, and given both the statement's identification of two individuals as the stabbers and the testimony at trial that defendant and Casares were the stabbers, it cannot be said that "there is no reasonable possibility that the erroneously admitted [statement] contributed to the conviction" (People v Hamlin, 71 NY2d 750, 756 [1988]).

        The erroneous admission of the statement must also be considered in conjunction with the improper hearsay testimony that defendant's girlfriend referred to defendant as "Bambino." As previously noted, the eyewitness identifications of Witness 1 and Witness 2 were open to challenge based upon their evident biases.  However, their testimony indicating that defendant -- who they knew as "Bambino" -- was one of the stabbers was bolstered by the detective's testimony that defendant's own girlfriend also called him "Bambino."  Notwithstanding that the trial court sustained an objection to the detective's testimony,

the confirmation that defendant was, in fact, "Bambino" undermined his attempts to call the credibility of Witness 1 and Witness 2 into question.  Additionally, although not alone determinative, we note that the jury here struggled with the verdict, requiring the court to provide an Allen charge.  The jury not only acquitted defendant of second-degree murder and the lesser included charge of first-degree manslaughter, but failed to reach a verdict on three other counts against defendant.  Under the circumstances, we reject the People's argument that the error in the admission of Villanueva's statement was "harmless beyond a reasonable doubt" (Hamlin, 71 NY2d at 756; see Wheeler, 62 NY2d at 869-870).

IV.

Finally, defendant's challenge to the denial of his motion to suppress the identification testimony -- to the extent that it was preserved[3] -- presents a mixed question of law and fact (see People v Howard, 22 NY3d 388, 403 [2013]; People v Gilford, 16 NY3d 864, 868 [2011]).  "The due-process inquiry for showups calls upon the suppression court to decide whether the showup was reasonable under the circumstances -- i.e., justified by exigency or temporal and spatial proximity -- and, if so, whether the showup as conducted was unduly suggestive" (Gilford, 16 NY3d at 868).  Inasmuch as "it simply cannot be said that no

---

[3] Defendant did not argue before the trial court, as he does here, that precinct showups are inherently suggestive.

record support exists for [the] determination that this showup was reasonable and not unduly suggestive" (<u>Howard</u>, 22 NY3d at 403 [emphasis added]), this mixed question is beyond our further review.

As a result of our decision, we need not address defendant's remaining contentions.  The order of the Appellate Division should be reversed and a new trial ordered.

The People of the State of New York v Assad Cedeno

No. 24

PIGOTT, J.(dissenting):

The primary issue in this case boils down to whether codefendant Villanueva's redacted statement "obviously refers to the defendant" (Gray v Maryland, 523 US 185, 194 [1998]). The majority holds that it does. I disagree.

A redacted statement of a non-testifying codefendant cannot be admitted at a defendant's joint trial if the redaction "so closely resemble[s]" the facially incriminating statements prohibited by Bruton v United States (391 US 123 [1968]) that the jury cannot refrain from attributing it to the defendant (Gray, 523 US at 192). Redactions that simply "replace[] a defendant's name with an obvious indication of deletion, such as a blank space, the word 'deleted,' or a similar symbol," generally fall within this rule (id.). However, it is not the case that every redacted statement containing blank spaces or signs of deletion must be excluded. If a redaction sufficiently conceals the person to whom the blank spaces refer, the statement may be admitted with proper limiting instructions (id. at 194).

Villanueva's redacted statement, read to the jury by Detective Moser without objection, provided in pertinent part:

> "Then all of a sudden one of the Latin Kings
> pulled out a knife and rushed the whole

- 1 -

crowd.  One of the Trinitarios asked me are
you with them.  I said no.  Then they started
throwing bottles.  There was a commotion on
the platform and I started running after
them.  I moved to the back of the car.  The
Latin Kings were there.  That's when . . .
[o]ne male pulled out a black knife.  He went
out of the train.  Then I looked out of the
car and observed him striking the victim with
the knife.  The victim was bleeding.  The
same Latin King . . . [r]an over to the
victim and started punching him with a small
knife.  Cops came back up on the platform and
found the victim on the floor.  Then more
police showed up."

No one suggested that this statement "obviously refer[red] to the

defendant" (Gray, 523 US at 194).  The identical statement was

introduced into evidence in written form.  On paper, it read:

"[T]hen all the sudden one of the Latin Kings
                    pulled out a knife and
rushed the whole crowd.  One of the
Trini[t]arios asked me are you with them I
said no, then they started throwing bottles,
there was a cop on the platform and he
started running after them.  I moved to the
back of the car the Latin Kings were there
that's when the one with            male
pulled out a black knife he went out of the
train, then I looked out the car and observed
him striking the victim with the knife.  The
victim was bleeding the    same Latin King
ran over to the victim and started punching
him with a small knife, the cop came back up
onto the platform and found the victim on the
floor, then more police showed up."

Although the redacted statement contained blank spaces

and clear signs of alteration, it "would not have caused the

jurors 'to realize that the confession refers specifically to the

defendant'" (People v Cedeno, 113 AD3d 695, 697 [2d Dept 2014],

quoting Gray, 523 US at 186).  The statement revealed only that

one Latin King pulled out a knife and punched the victim, while
another attacked him with a knife.  But there were four Latin
Kings at the defense table, of whom Villanueva was one.  Thus,
even if Villanueva's redacted statement "implicated a specific
Latin King" (majority op at 11), it is not at all clear which
Latin King it implicated -- defendant, Casares, Tineo, one of the
participants who pleaded guilty before trial, or yet another
person who may have escaped in the mayhem (see Gray, 523 US at
195 [noting that the blank spaces in a redacted statement may not
clearly refer to a defendant where the statement "uses two (or
more) blanks, even though only one other defendant appears at
trial, and in which the trial indicates that there are more
participants than the confession has named"]).  A juror wondering
to whom the statement might refer would need to do much more than
"lift his [or her] eyes" to counsel's table to determine "what
[would] seem the obvious answer" (majority op at 12, quoting
Gray, 523 US at 193).  He or she would first need to link the
statement with other evidence presented at trial and draw
inferences based on that evidence in order to conclude that
defendant may have been involved.  Where such inference and
linkage is required, Bruton does not apply.[1]

---

[1] I question whether Villanueva's statement even falls
within Bruton's protections since it did not identify defendant
by name or specific description.  It identified him only by an
article of clothing, when it said that "one of the Latin Kings
wearing red & white trunks pulled out a knife and rushed the
whole crowd."  That fact alone makes this statement substantively

The Second Circuit's recent decision in <u>Jass</u> supports this conclusion (569 F3d 47 [2d Cir 2009]).  Defendant Jass and codefendant Leight were charged with several counts of criminal sexual activity with a child.  After his arrest, Leight had made a statement to the authorities that "he and Jass had taken [the victim] to [a] mall in New Jersey" and, after they went shopping they took the victim to a hotel and performed multiple sexual acts with her (<u>id.</u> at 52).  At trial, an FBI agent testified to a redacted account of Leight's post-arrest admissions, substituting the phrase "another person," "the other person" and "we" wherever Leight had previously identified the defendant.  Thus, as redacted, the agent testified that "Mr. Leight told me that he and another person had taken [Victim 2] to the Rockaway Mall in New Jersey," that "he and the other person and [Victim 2] returned back to the hotel," that "Mr. Leight stated to me that [Victim 2] kissed him and the other person," etc. (<u>id.</u> at 53).

The trial court admitted these redacted statements with a limiting instruction to consider them only as evidence against

---

different from the ones at issue in <u>Bruton</u> and <u>Gray</u>, which directly identified the defendant by name (<u>see</u> <u>Bruton</u>, 391 US at 124; <u>Gray</u>, 523 US at 192), as well as the statement in <u>Harrington v California</u>, which identified the defendant as a "white guy" and gave a description of his age, height, weight and hair color (395 US 250, 253 [1969]).  Although the Court in <u>Gray</u> said that "nicknames and <u>specific descriptions</u>" fall within <u>Bruton</u>'s scope, it has yet to apply a <u>Bruton</u> analysis to a statement like Villanueva's that identifies the defendant only by brief reference to the color of his shorts (<u>id.</u> at 195 [emphasis added]).

Leight.[2]  Defendant was convicted and claimed on appeal that the
redactions facially implicated her in the crime.  The Second
Circuit disagreed, and held that no Sixth Amendment violation
occurred because "it would not have been immediately apparent to
a jury that heard only [the codefendant]'s redacted references to
'another person' that he was specifically inculpating [defendant]
in the abuse of [the victim]. . . . The 'other person' could have
been anyone" (id. at 62 [emphasis added]).  The Second Circuit
reached this conclusion, notwithstanding the fact that Leight's
statements incriminated only one other person, and that Jass was
the only other defendant at trial.

Like the testimony admitted in Jass, it was not
immediately apparent to the jury that defendant was either the
"Latin King" or the "male" inculpated in the redacted statement.
Any of the Latin Kings Villanueva described at the subway station
fit that description, as well as the three defendants on trial
with him.  Because there is nothing in Villanueva's redacted
statement that identified, let alone "powerfully incriminat[ed]"
(Bruton, 391 US at 135) defendant as one of the perpetrators of
the crime, and none of defendant's remaining arguments warrants
reversal, I would affirm.

---

[2] The trial court in this case did not instruct the jury to
use the redacted statement only against codefendant Villanueva,
but defendant did not object to the court's instruction and does
not challenge it here.  Therefore, the adequacy of the court's
charge in the context of the alleged Bruton error is not before
us (see People v Hawkins, 11 NY3d 484, 491-492 [2009]).

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order reversed and a new trial ordered.  Opinion by Judge Stein.
Chief Judge DiFiore and Judges Rivera, Abdus-Salaam and Fahey
concur.  Judge Pigott dissents in an opinion in which Judge
Garcia concurs.

Decided March 29, 2016